THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD CLARK, Defendant-Appellant.

First District (3rd Division)    No. 61696

Opinion filed November 23, 1977.

Arthur H. Grant, Ltd., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, James S. Veldman, and Louis R. Schroeder, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:
Following a bench trial, defendant Richard Clark was acquitted of involuntary manslaughter but found guilty of reckless homicide (Ill. Rev. Stat. 1971, ch. 38, par. 9—3(b)) and sentenced to 1 year of periodic imprisonment. Defendant appeals, contending that the indictments for

reckless homicide were fatally defective; that he was not proved guilty beyond a reasonable doubt; and that the court erred in allowing into evidence his answers to questions a police officer asked before his arrest without giving the defendant the prior warnings required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

This case involves an automobile accident which occurred on August 18, 1972 at approximately 7 p.m. The defendant and his three brothers, William, Thomas and George, all were in a GTO, traveling west on 143rd Street near Orland Park. The road there was a hilly, two-lane highway, divided by a double yellow center line, with a 45-mile-per-hour speed limit. William and Thomas Clark died as a result of the accident, while the defendant and George Clark survived. The defendant contended at trial that his brother Thomas was driving the car when the collision occurred.

James Rife testified that as he was driving a tanker truck west on 143rd Street near Orland Park, he saw a GTO auto in his rear-view mirror overtake and pass the two cars immediately behind him, at 60 to 70 miles per hour. After the GTO passed his truck, the car swerved into the westbound lane and hit the shoulder of the road. The driver lost control and his car skidded into the eastbound lane, where it struck a Cadillac. Mr. Rife stopped his truck and helped to remove the defendant and two of his brothers from the car. He testified that when he pulled the defendant out, the defendant was on the left front seat with his feet under the steering wheel.

Robert Jaros, the driver of the Cadillac, testified that as he was traveling east on 143rd Street, he saw the GTO coming westward over the hill in his lane at a speed of approximately 75 to 85 miles per hour. This caused him to pull his car over into a ditch on the far right side of the road. Jaros stated that the GTO was sliding across both lanes, and that he saw the defendant at the steering wheel from a distance of 50 feet until just before the collision.

Edward Crezik testified that his car was directly behind the Cadillac and that the GTO fishtailed across both lanes of traffic before colliding with the Cadillac and with his own car.

Officer Dado, a police investigator, testified that he first saw the defendant 4½ hours after the accident in the intensive care unit of a hospital. When he asked the defendant who was driving the motor vehicle, the defendant replied that "he had been driving the motor vehicle." Dado further asked the defendant if he had anything to drink before driving the car, and the defendant replied, "A couple of beers." The investigator, who observed that the defendant was wearing a torn, navy-blue polo shirt, then placed the defendant under arrest and read the *Miranda* warnings to him.

At trial, it was stipulated that the testimony of Robert Niebert given at

the preliminary hearing was to be admitted into evidence. Niebert identified the defendant as the driver of the car and stated that the defendant was wearing a dark-blue pullover shirt. Niebert testified that when the GTO stopped for a traffic signal, he pulled his motorcycle up to the right side of this car. He said his attention was attracted to the car because its driver kept revving his engine. When the traffic light changed, the defendant forced Niebert off the side of the road and then sped away, traveling over 80 miles per hour. Niebert testified that while he was pursuing the defendant, he saw the GTO cross the double yellow line, pass the tanker truck and swerve in front of it. At this point the GTO went out of control, careened into the eastbound lane and struck the Cadillac. Niebert pulled the defendant from the wreckage, and said the defendant was lying partially outside the car with his feet under the steering wheel.

J. Jackson Robinson testified that he knew the defendant and his brothers, and that about half an hour before the accident he saw them come into a gasoline service station. Robinson said that Thomas Clark was driving the car when it entered and left the station.

The defendant's brother George, who was in the car when the accident occurred, testified that he was with his brothers for all but 15 or 20 minutes of the 2 to 3 hours before the accident and that his brother, Thomas, the owner of the car, was driving when the accident occurred. He further stated that he did not know the speed at which the car was traveling, he did not remember passing the cars and the truck and he did not see the defendant or his other brothers drink any liquor while in his presence. He further stated that the defendant was wearing a green fishnet T-shirt.

The defendant's mother testified that when three of her sons left to pick up the defendant, Thomas was driving. She also identified a green fishnet shirt which she stated belonged to the defendant. She said she saw the shirt in the window near the defendant's bed in the hospital the evening of the accident.

The defendant testified in his own behalf that he and his brothers had been drinking prior to the accident. He said he was seated in the front seat on the passenger side, his brother Thomas was driving, and he did not notice the speed at which they were traveling. The defendant admitted that he was unconscious after the accident and that he suffered a fractured jaw and fractured ribs. He also testified that he answered affirmatively when Officer Dado asked him if he ever drove the car, but he did not remember if Officer Dado asked him if he was driving at the time of the accident.

The defendant contends the indictments against him are fatally defective because they do not recite the specific overt acts relied upon to sustain the charges of reckless homicide. The indictments charge that the defendant committed "the offense of reckless homicide * * * without

legal justification while driving a motor vehicle, to wit: an automobile, and recklessly performed acts in such a manner as was likely to cause death or great bodily harm to some individual and such acts caused the death of William Clark, (a passenger in said motor vehicle) in violation of chapter 38, section 9—3(b) of the Illinois Revised Statute 1971." The second indictment, similarly worded, stated that those acts caused the death of Thomas Clark, another passenger in the vehicle.

■■■ In *People v. Jones* (1971), 2 Ill. App. 3d 575, 277 N.E.2d 144, a distinction was made between indictments charging reckless driving and those charging reckless homicide. The prosecution there pointed out that the gist of the offense is not what constitutes "reckless driving," but what constitutes the offense of "reckless homicide." The court in *Jones* held that the particular act relied on to sustain the charge causing the death of a person could only take place once, and naming the person who was the homicide victim would eliminate any prospect of vagueness and bar any subsequent prosecution. Here, the defendant could have caused the death of his brothers only once. Therefore, it was unnecessary for the indictment to allege precise acts of recklessness. *Jones*, at 577; *People v. Mowen* (1969), 109 Ill. App. 2d 62, 68-69, 248 N.E.2d 685.

Defendant also contends that the evidence is insufficient to support his conviction for reckless homicide. He, his mother, one brother and another witness testified that they saw Thomas Clark, the owner of the car, driving the GTO. In addition, George Clark and the defendant testified that the latter was wearing a green fishnet T-shirt on the day of the accident. His mother testified to seeing the green shirt in his hospital room the night of the accident.

This testimony was contradicted by Robert Jaros, Robert Niebert and James Rife. Jaros and Niebert positively identified the defendant as the driver of the car. Rife and Niebert also testified that immediately after the collision, the defendant was partially in the left front seat of the car with his feet under the steering wheel. Each of these individuals helped to pull the occupants of the GTO out of the car. Further, when Officer Dado asked the defendant who was driving the car, the officer testified that the defendant admitted he had. Officer Dado also observed that defendant had on a torn, navy polo shirt, an observation corroborated by Rife's statement that the defendant wore a dark-blue pullover shirt.

■■ The contradictory testimony as to who was driving the car at the time of the accident was a matter for the trier of fact to resolve. It was his province to believe certain witnesses and to disbelieve others, and this responsibility should not be infringed on by a court of review. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Jackson* (1973), 54 Ill. 2d 143, 295 N.E.2d 462.) Here, the testimony of Jaros, Niebert, Rife and Officer Dado was sufficient to establish the defendant drove the car.

In addition, the State sufficiently proved the elements of the offense of

reckless homicide. In *People v. Chambers* (1972), 8 Ill. App. 3d 430, 434, 289 N.E.2d 476, the court held:

> "The Statute defines recklessness as a conscious disregard of 'a substantial and unjustifiable risk that circumstances exist or that a result will follow, * * *; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation * * *.' "

The defendant's overt acts of driving in the manner the evidence showed manifested a conscious disregard of the standard of care normally exercised by a reasonable person. Here, the defendant passed two cars and a tanker truck on a two-lane highway in a hilly, no-passing zone marked by a double yellow line. Although the speed limit in this area was 45 miles per hour, the evidence showed that his car was traveling from 60 to 70 miles per hour according to Rife's testimony, or approximately 80 miles per hour according to the testimony of Niebert and Jaros. Attempting to pass two cars and a tanker truck under these circumstances certainly evinces conscious disregard by the defendant for the safety of the passengers in the GTO and any other persons on the highway. Where the evidence, as here, is sufficient for a conviction, a reviewing court should not substitute its judgment for that of the trier of fact. *Akis.*

■■ Defendant's final contention is that his response to Officer Dado's questions was admitted in evidence in violation of the *Miranda* guidelines. It has been held that the *Miranda* standards are directed solely toward warnings stemming from custodial interrogation of a person. (*Oregon v. Mathiason* (1977), 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711; *In re Orr* (1967), 38 Ill. 2d 417, 231 N.E.2d 424; *People v. Reeder* (1971), 2 Ill. App. 3d 471, 276 N.E.2d 768.) Here, the record shows that Officer Dado was making an investigation of the accident when he went to the hospital to question the defendant 4½ hours after the occurrence. The questions were general questions asked in the course of the fact-finding process, and the defendant's answers were merely the product of a routine investigation. Because the questioning was investigatory and did not stem from a custodial interrogation, the officer was not required to give the *Miranda* warnings before he asked them. Accordingly, the colloquy was admissible in evidence. *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870; *People v. Tate* (1970), 45 Ill. 2d 540, 249 N.E.2d 791; *People v. Milligan* (1969), 107 Ill. App. 2d 58, 245 N.E.2d 551.

Judgment affirmed.

JIGANTI and McGILLICUDDY, JJ., concur.