THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN B. CAMP, Defendant-Appellant.

First District (2nd Division)    No. 83—1482

Opinion filed October 16, 1984.

Steven Clark and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Karen C. Wirth, and Edward V. Edens, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

The defendant was found guilty in a jury trial of two counts of reckless homicide. The trial court thereafter sentenced him to concurrent two-year terms in the Illinois Department of Corrections. The defendant appeals his conviction.

The evidence adduced at trial showed that the defendant, Steven Camp, was involved in an automobile collision that occurred on November 1, 1981, at approximately 4:20 a.m. Prior to defendant's jury trial, the defendant filed a written motion to dismiss the indictment, alleging that it was conclusionary and insufficient to state a charge. The court denied defendant's motion to dismiss.

The collision occurred at the intersection of Palatine Road and Route 62 and involved vehicles driven by Steven Camp and Victor Ru-

bini. The collision caused the death of Rubini and Karen Musaus, one of the passengers in Camp's vehicle. The evidence showed that at about 9:30 p.m. in October 31, 1981, Camp, Tim Bost, Patricia LaRocco, Musaus, and another companion, Beth Phillips, had all met early in the evening and went to Camp's apartment prior to their attending a Halloween party at another residence. While at Camp's apartment, the members of the group split two quarts of beer between them, each drinking about one glass of beer. The group then left Camp's apartment at about 10 p.m. and drove in Camp's car to the Halloween party at a house in Palatine. At the party, Camp and the others danced, talked and drank beer. According to LaRocco, the only member of the group to testify other than Camp, she drank at least eight glasses of beer, while Camp drank at least five. Camp testified to drinking four or five cups of beer. LaRocco also testified that seven guests, including herself and Camp, shared a marijuana cigarette. Camp testified to only taking one or two puffs of marijuana from a pipe and not feeling any effects from it.

The group prepared to leave the party between 3 and 4 a.m. Camp went with Musaus to retrieve the car while the other three waited outside the house. After Camp brought the car around front, the other three entered the car. LaRocco testified that Camp was drunk, though she could not remember what happened after the car began to move. Camp testified that he was not intoxicated when he left the party. He did admit to an assistant State's Attorney that he was feeling tired and "buzzed" when he went to his car. The defendant further admitted that he was speeding and, because he was tired and had been drinking, that he should not have driven that night.

As Camp drove along Palatine Road, nearing the intersection of Route 62, Carl Traub, a Barrington Hills police officer, testified that he estimated Camp's speed as being in excess of 65 miles per hour (in a 50 miles per hour zone). Traub was at the intersection at the time of the collision using radar to clock eastbound traffic on Route 62. Camp did not remember seeing a stop sign at the intersection, did not remember how fast he was going, did not remember seeing any warning signs of the approaching intersection, and did not attempt to brake as he entered the intersection. Palatine Road has a stop sign at Route 62. Also, Route 62 is a posted 55 miles per hour zone with no traffic control devices in the immediate vicinity of its intersection with Palatine Road. As Camp attempted to make a right-hand turn onto Route 62, he skidded across three lanes of traffic before colliding head-on with Victor Rubini's Cadillac, which had been heading eastbound on Route 62. The collision resulted in the death of Rubini and

Karen Musaus, the front-seat passenger in Camp's car.

The jury found the defendant guilty on both counts of reckless homicide and he was sentenced to concurrent two-year prison terms.

The defendant first contends that the trial court erroneously denied his motion to dismiss the indictments. The defendant asserts that the indictments were fatally defective because they failed to particularize the specific acts upon which the two charges of reckless homicide were based. The first indictment provided:

"[O]n November 1st, 1981, at and within the County, Steven B. Camp committed the offense of reckless homicide in that he, without lawful justification, while driving a motor vehicle, to wit: an automobile, recklessly performed acts in such a manner as were likely to cause death or great bodily harm to some individual and such acts caused the death of Karen Musaus in violation of Chapter 38, Section 9—3(a) of the Illinois Revised Statutes 1979 as amended."

The second indictment was identical in all respects save for the name of the victim, which was Victor Rubini.

Under Illinois law, the elements of the offense of reckless homicide are (a) that the defendant caused death while driving a motor vehicle recklessly, and (b) that he drove the motor vehicle in such a manner that he was likely to cause death or great bodily harm to some individual. (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a); *People v. Boyle* (1979), 78 Ill. App. 3d 791, 797, 396 N.E.2d 1347.) If the indictment is otherwise sufficient, then, in reckless homicide cases, it is not necessary to allege the precise acts of recklessness or the particular acts upon which the prosecution will rely. *People v. Boyle* (1979), 78 Ill. App. 3d 791, 797, 396 N.E.2d 1347; *People v. Clark* (1977), 55 Ill. App. 3d 496, 499, 371 N.E.2d 33; *People v. Jones* (1971), 2 Ill. App. 3d 575, 577, 277 N.E.2d 144; *People v. Mowen* (1969), 109 Ill. App. 2d 62, 68-69, 248 N.E.2d 685.

The defendant's citation to *People v. Hayes* (1979), 75 Ill. App. 3d 822, 394 N.E.2d 80, and *People v. Griffin* (1967), 36 Ill. 2d 430, 223 N.E.2d 158, is unpersuasive in that *Hayes* was a reckless conduct case and *Griffin* was a reckless driving case. The Illinois courts have repeatedly distinguished simple recklessness cases from reckless homicide cases in terms of the necessity for particularized indictments. (*People v. Boyle* (1979), 78 Ill. App. 3d 791, 396 N.E.2d 1347; *People v. Clark* (1977), 55 Ill. App. 3d 496, 371 N.E.2d 33; *People v. Jones* (1971), 2 Ill. App. 3d 575, 277 N.E.2d 144; *People v. Mowen* (1969), 109 Ill. App. 2d 62, 248 N.E.2d 685. *Cf. People v. Farris* (1980), 82 Ill. App. 3d 147, 402 N.E.2d 629.) The central concern of

particularized indictments is the safeguarding of the defendant's right against double jeopardy. In reckless homicide cases, naming the victim of the homicide in the indictment eliminates any vagueness in the charge, thereby securing the defendant's rights. *People v. Clark* (1977), 55 Ill. App. 3d 496, 371 N.E.2d 33; *People v. Jones* (1971), 2 Ill. App. 3d 575, 277 N.E.2d 144; *People v. Mowen* (1969), 109 Ill. App. 2d 62, 248 N.E.2d 685.

■ In this reckless homicide case, the defendant could unquestionably have caused the death of Victor Rubini and Karen Musaus only once, and both were named in the indictments. It was not necessary therefore to allege specific acts of recklessness. Furthermore, the language of these indictments is almost identical to the language of the reckless homicide indictment upheld in *People v. Clark* (1977), 55 Ill. App. 3d 496, 498-99, 371 N.E.2d 33. It therefore cannot be said that the trial court erred in denying the defendant's motion to dismiss the indictments.

■ The defendant next contends that the trial court erred in allowing the prosecution to introduce and comment upon alleged hearsay testimony. During its case-in-chief, the prosecution elicited testimony from a passenger in the defendant's car (LaRocco) that another passenger (Bost) had asked the defendant questions relative to the defendant's ability to drive. The record disclosed the following exchange:

"Q. As best as you can recall, what did Mr. Bost say to the defendant, what did the defendant respond?

MR. DOWNS: Objection to what someone said to the defendant.

THE COURT: I'm going to overrule your objection. You may answer.

THE WITNESS: Tim asked Steve if he was all right to drive the car and Steve said yes, and Tim asked him again and Steve still said, 'Yes, I'm all right to drive.'

MR. PAYNTER: Now, Miss LaRocco, did in fact—

MR. DOWNS: I would object and as [*sic*] that that be stricken, Judge.

THE COURT: No, that shall stand. Overruled."

The defendant testified that he had no recollection of any such conversation with Bost. The defendant argues that the preceding testimony was elicited for the purpose of showing that Bost believed the defendant to have been intoxicated and incapable of driving and should therefore have been excluded by the court as hearsay.

Hearsay is defined as "testimony of an out-of-court statement of-

fered to establish the truth of the matter asserted therein, and resting for its value upon the credibility of the out-of-court asserter." (*People v. Rogers* (1980), 81 Ill. 2d 571, 577, 411 N.E.2d 223.) Hearsay evidence is generally inadmissible subject to certain exceptions. As explained below, the complained-of testimony in this case does not fall within the purview of the hearsay rule.

The determination of the "matter asserted" in this testimony is complicated by the fact that the "statements" are in question form. As the prosecution points out: "Stated as such, in question form, the statement doesn't assert anything." The defendant argues that although the remarks were in the form of a question, the underlying assumption of the statements is that Bost believed the defendant to be intoxicated and that the statements were being introduced to show that belief.

■ The phrase "matter asserted" in the hearsay definition includes matters directly expressed as well as implicit matters the declarant necessarily intended to express. (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 801.1, at 508 (4th ed. 1984).) The statements at issue here fall within the latter category. Implicit assertions are those the declarant necessarily intends to assert which form the basis or foundation for the directly-expressed matter to the extent that the implicit or foundational assertions must be considered true in order to understand the directly-expressed matter in the context in which it is said. (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 801.1, at 508 (4th ed. 1984).) In this case, the declarant merely asked, "Are you all right to drive the car?" As such, this statement requires no implicit or foundational facts to be accepted as true in order to understand it in context. The statement does not presuppose that the defendant is unable to drive as an implicit fact that must be true. At most, the statement presupposed that Bost believed that the defendant was going to drive the car. Beyond that, however, the defendant's argument would require an examination into the motives of Bost at the time he asked the question, something clearly unwarranted. The only matter asserted therefore was the directly-expressed one, *i.e.*, are you all right to drive, and perhaps that Bost believed that the defendant was going to drive. The prosecution would obviously not be interested in establishing the truth of the former, and Bost's belief that the defendant was going to drive the car is of no consequence to this action, since it is undisputed that the defendant did in fact drive the car.

■ ■ If the statements do carry a prohibited assertion, they are still not excluded by the hearsay rule because they were not used for

the purpose of establishing the truth of the matter asserted. Out-of-court statements used other than for purposes of establishing the truth of the matter asserted do not rest for their value on the credibility of the out-of-court declarant and are generally admissible. (*People v. Richardson* (1974), 21 Ill. App. 3d 859, 861, 316 N.E.2d 37.) The extrajudicial statements are admissible to show, *inter alia*, that the recipient was placed on notice or had knowledge of a certain fact (*People v. Campbell* (1975), 28 Ill. App. 3d 480, 487, 328 N.E.2d 608) or the recipient's state of mind upon and after hearing the statement (*People v. Cooper* (1981), 97 Ill. App. 3d 222, 226, 422 N.E.2d 885) or to show the effect of the statement on the recipient (*People v. Canamore* (1980), 88 Ill. App. 3d 639, 641, 411 N.E.2d 292).

■ The defendant argues that the statements were introduced solely to show the declarant's belief that the defendant was intoxicated at the time he drove away from the party and are thus inadmissible. These statements, however, were used for the purpose of showing their effect on the recipient (the defendant). When the statements were made, the resultant effect was that the defendant considered and evaluated his ability to drive the car at that point in time, and consciously did choose to drive the car. This cognitive action on the part of the defendant was relevant to establish that the defendant had a reckless state of mind, an essential part of a reckless homicide prosecution. (*People v. Smith* (1984), 99 Ill. 2d 467, 472, 459 N.E.2d 1357.) A reckless state of mind can be proved by showing that the defendant consciously disregarded a substantial and unjustifiable risk. (Ill. Rev. Stat. 1981, ch. 38, par. 4—6.) The effect of these statements on the defendant, therefore, was independently significant in establishing a conscious disregard, and they are not excluded by the hearsay rule.

■ ■ The defendant further argues that, assuming the statements were admissible, they were rendered inadmissible hearsay during the prosecution's closing argument. (See *People v. Escobar* (1979), 77 Ill. App. 3d 169, 395 N.E.2d 1028 (where hearsay purpose of evidence became apparent during prosecution's closing argument).) During closing arguments the prosecution argued the following:

"Keep in mind the testimony of Patty LaRocco that she heard Tim Bost ask the defendant, 'Are you okay,' and Mr. Camp said, 'Sure, I am okay. I can drive.' She [*sic*] asked again, 'Are you okay,' and this is one of his friends. Now, there must be some reason why he is asking those types of questions.

MR. DOWNS: Objection. They were going to call them. Now counsel is not only testifying for Mr. Bost but he is reviewing the thought processes of Mr. Bost.

\* \* \*

THE COURT: Your objection is overruled, Mr. Downs.

MR. DOWNS: Thank you.

THE COURT: The jury is admonished to disregard counsel's remarks. The objection is overruled.

MR. PAYNTER: What Mr. Bost said to Mr. Camp is a matter of evidence and you heard it. Mr. Camp did not even say that Mr. Bost didn't say it. He just said that he couldn't remember him saying it which may be another indication of the state that Mr. Camp was in."

The defendant argues that the prosecution should not be able to prove by inference what it could not prove directly. When the evidence was originally admitted, however, the defendant did not ask for a limiting instruction in order to help guide the jury in its proper use of the admitted testimony. As a general rule, the opposing party is entitled, *on request*, to have the judge instruct the jury to limit its use of the evidence accordingly. (*People v. Garza* (1981), 92 Ill. App. 3d 723, 733, 415 N.E.2d 1328.) But, the court is under no duty to give a limiting instruction on its own motion. (*People v. Garza* (1981), 92 Ill. App. 3d 723, 733, 415 N.E.2d 1328.) Consequently, in a case where no limiting instruction is requested by opposing counsel and where the court does not give one on its own accord, as in the present case, the evidence is admitted generally. (*People v. Webb* (1982), 109 Ill. App. 3d 328, 332, 440 N.E.2d 406.) Thus, even though the statements in the case at bar were admissible only for the limited purpose of showing their effect on the defendant, and not to show the truth of the matter asserted, the defendant cannot be heard to complain that the evidence was admitted generally, and so used by the prosecutor, when he failed to request that the court limit the application of the evidence. (*Hackett v. Ashley* (1979), 71 Ill. App. 3d 179, 187, 389 N.E.2d 246.) Also, it is less than clear from the quoted portion of the prosecutor's argument that an improper use was being made of the evidence. The defendant fails to quote the prosecutor's rebuttal argument, which clearly demonstrates that the State was only using the admitted testimony for the limited purpose of showing its effect on the defendant. Assistant State's Attorney Mermel argued as follows:

"Mr. Downs talks about conscious disregard. Let me focus your attention on that specific instance, and there was one. You recall the testimony at which Timothy Bost was heard to say to the defendant, 'Are you all right, can you drive, are you all right to drive.' It was at that very moment the defendant had the choice to make. I have been drinking here for five hours. I

have started drinking even before I got here. Am I all right to drive. He wasn't and you know it, but he decided to get into that car and drive. That is conscious disregard."

The trial court did not err in allowing the testimony into evidence, and no subsequent error resulted from its admission. The defendant's hearsay argument is therefore without merit.

■■ The defendant finally contends that the prosecutor's closing argument was improper, thereby prejudicing the defendant and requiring a new trial. Our analysis of this contention focuses on the defendant's post-trial motion, which merely states that the trial court "erred in allowing the State to make a prejudicial and improper closing argument." The motion does not set forth the specific remarks asserted to be prejudicial. We recently held, however, that a post-trial motion stating that the prosecutor's closing argument contained "prejudicial, inflammatory, and erroneous statements designed to arouse the passions and prejudice of the jury," without stating the specific statements complained of, did not preserve the issue for review. (*People v. Thomas* (1983), 116 Ill. App. 3d 216, 220, 452 N.E.2d 77; *People v. Buford* (1982), 110 Ill. App. 3d 46, 54-55, 441 N.E.2d 1235.) Similarly, in *People v. Turk* (1981), 101 Ill. App. 3d 522, 428 N.E.2d 510, the defendant's post-trial motion was not deemed sufficiently specific where it merely alleged that the prosecutor's closing arguments were " 'inflammatory, prejudicial and invaded the defendant's Sixth Amendment right to counsel and exhorted the jury to convict the defendant based on matters which [are] dehor [*sic*] the record in violation of the defendant's rights under the Sixth and Fourteenth Amendments of the United States Constitution.' " (101 Ill. App. 3d 522, 533.) The motion in the instant case is as general as the preceding two examples in which it was held that the alleged errors were not preserved for review. Although this post-trial motion would apparently be sufficient under *People v. Rivera* (1978), 62 Ill. App. 3d 401, 378 N.E.2d 1293, we decline to endorse such lax post-trial practice as it would effectively defeat the underlying purpose of the post-trial motion, namely, to allow the trial court an opportunity to review and correct alleged errors that occurred during trial. See *People v. Caballero* (1984), 102 Ill. 2d 23, 31, 464 N.E.2d 223; Chicago Daily Law Bulletin, Sept. 14, 1984, at 3, col. 3 (letter by assistant State Appellate Defender suggesting that lawyers improve their post-trial motions); and Polelle, *A Puzzling Discrepancy: Illinois Civil and Criminal Post-Trial Motion Practice*, 58 Chi. Bar Rec. 144 (1976-77).

■■ Also, merely because the defendant made an appropriate objection at trial does not preserve the error for review when his post-

trial motion is either not filed, does not contain the alleged error, or contains a general statement of error without stating the specific grounds of complaint. (*People v. Thomas* (1983), 116 Ill. App. 3d 216, 221, 452 N.E.2d 77.) Further, the defendant's act of including in the motion the statement that it is "expressly understood that defense counsel has not yet been furnished with an official transcript of the trial and makes this motion on behalf of his client, without prejudice to or waiving the later discovery of error in the trial record," in an apparent attempt to preserve any and all errors, is ineffective, especially when, as in this case, the error could have been known to defense counsel even without the benefit of a transcript. (*People v. Goble* (1976), 41 Ill. App. 3d 491, 499, 354 N.E.2d 108; *People v. Rogers* (1975), 32 Ill. App. 3d 788, 790, 336 N.E.2d 784.) The defense counsel was surely aware of this error, since he objected to the remarks at trial. Counsel could have included at least some of the troublesome language indicative of the prejudicial tenor without the need of the transcript. This was not done, and we accordingly conclude that the issue has been waived.

Under Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)), this court may elect to consider errors that have not been properly preserved for review where the evidence at trial is closely balanced or the errors would deprive the defendant of a fair and impartial trial. (See *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) In the instant case, however, invocation of Rule 615(a) is not necessary, because the evidence of defendant's guilt is not so closely balanced that the alleged error could have deprived him of a fair trial.

The testimony overwhelmingly supports the defendant's conviction. Officer Traub, who was present at the scene of the accident at the time of the occurrence, observed the defendant's vehicle traveling at an excessive rate of speed and observed the defendant disregard a stop sign. Testimony showed that the defendant slid across three lanes of traffic and that he had been drinking all evening, as well as smoking marijuana. LaRocco testified that the defendant was obviously drunk when he left the party and got into his car. Also, the defendant admitted that he was speeding, that he was feeling tired and "buzzed," to not seeing the stop sign or any warning signs and that he should not have been driving that night. The evidence adduced at trial, and the logical inferences therefrom, lead inescapably to the conclusion that the defendant was guilty, and we will not therefore recognize the alleged errors under the plain-error doctrine of Rule 615(a).

For the reasons expressed herein, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN, P.J., and PERLIN, J., concur.