THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDWIN GUTIERREZ *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 83—167, 83—196, 83—344 cons.

Opinion filed September 16, 1985.

Steven Clark and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant Edwin Gutierrez.

Gregory J. Schlesinger, of Chicago, for appellant Anibal Santiago.

James J. Doherty, Public Defender, of Chicago (Robert Guch, Assistant Public Defender, of counsel), for appellant Eduardo Rosario.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Frank Zelezinski, and Mark L. Lefevour, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Defendants Edwin Gutierrez, Anibal Santiago, Eduardo Rosario and Alberto Arroyo were charged by indictment with the murder of Juan Gomez. Defendants Santiago, Gutierrez and Rosario were tried by a jury. Defendant Arroyo was tried at a simultaneous bench trial before the same judge. The trial court found Arroyo not guilty, while the jury found codefendants Santiago, Gutierrez and Rosario guilty of murder. Santiago was sentenced to 70 years in prison, Gutierrez to 50 years in prison and Rosario to 40 years in prison.

The appeals of Santiago, Gutierrez and Rosario have been consolidated by this court. The following arguments are set forth for our review: (1) Gutierrez and Santiago argue they were not proved guilty beyond a reasonable doubt; (2) Gutierrez contends his arrest was not supported by probable cause; (3) Santiago argues the State improperly used its peremptory challenges during *voir dire* to exclude blacks; (4) Santiago alleges he was prejudiced by a discovery violation by the State which resulted in ineffective assistance of counsel; (5) Gutierrez and Santiago argue that certain prosecutorial misconduct during trial and closing argument resulted in reversible error; (6) Gutierrez and Santiago assert that the trial court erred in allowing the State to present a certain unanticipated witness in aggravation and in denying

their motion for a continuance to investigate the witness; and (7) Rosario, Santiago and Gutierrez contend their sentences are excessive. For the following reasons, we affirm as to all three defendants.

At trial, Sonya Rodriguez testified that on October 7, 1981, the date of the murder, she and her baby had been living with the victim, Juan Gomez, in an apartment at Monticello and Courtland in Chicago. At approximately 12:30 p.m. on that date, she was inside the apartment while the victim was outside fixing a flat tire on his car. She heard six or seven gunshots, looked out her front living room window and saw the victim lying on the sidewalk. Within seconds after the shooting she saw the backs of three men running into the alley towards Lawndale Avenue. Rodriguez stated that one of the men was stocky with dark hair, wore a black leather jacket and held a gun up in the air as he ran into the alley. A second man was slightly taller than the first man and was wearing an afro haircut and green camouflage army pants. The third man was about the same height as the second man.

Brothers Charles and James Kidd testified that shortly prior to the shooting they were travelling west on Courtland between Monticello and Lawndale. Charles Kidd lived at 3706 Courtland, which was three houses from Lawndale. As they drove up to Charles' house, Charles saw a "heavy-built" man in a black leather jacket, whom he identified as defendant Santiago, emerge from the gangway next to his house. Charles saw Santiago walk up to a 1973 maroon Pontiac that was parked in front of his house. Santiago began talking with the individual sitting in the driver's seat of the Pontiac LeMans, whom both brothers identified as Gutierrez. Charles Kidd then turned his truck around and parked it across the street from the LeMans behind a brown Buick Electra 225.

Charles Kidd's wife then pulled up in her car, and the LeMans quickly drove westbound and was not seen again by either brother. Meanwhile, James Kidd saw three men leave the parked Buick Electra and head down Lawndale towards the alley. The Buick was then driven around the corner, where it stopped and waited near Lawndale and Courtland. Shortly thereafter, the Kidd brothers testified they heard gunshots and ran to the intersection of Lawndale and Courtland where they observed at least three men jump into the Buick. Defendant Santiago, who was the driver of the Buick at that time, noticed that the Kidd brothers were watching him. He pointed his finger and yelled at the brothers. As the car drove away, Charles Kidd saw that the license plate number was QA24 and two other numbers that he could not ascertain.

Also testifying for the State were Yvonne Sosa and Nina Thompson, who lived together at 1841 Lawndale. Both women stated they heard the shooting. Sosa testified that after being awakened by the gunshots, she went to her bedroom window and saw three men coming from the direction of Monticello Street, where the shooting occurred. The men ran towards Lawndale Avenue, where a brown Buick Electra was waiting for them. A maroon colored car followed the three men down the alley towards Lawndale Avenue.

Sosa testified that the first man she saw running down the alley was 5 feet 8 inches, had a beard and was wearing a black leather jacket and dark pants. He also had a gun and red and blue ski mask in his hand as he ran down the alley. She identified defendant Santiago at trial as this first man.

The second man Sosa saw running in the alley was a little taller and thinner than Santiago and had a small beard and black hair. He wore a green windbreaker and dark pants. She identified defendant Gutierrez in a post-arrest lineup and in court as the second man.

Sosa testified that the third man wore green pants and had an afro haircut, a small beard and a mustache. He also was carrying a gun in his hand while he ran down the alley. Before exiting the alley, the man turned around and looked at Sosa. Subsequently, Sosa identified defendant Rosario as the third man in a post-arrest lineup and at trial.

All three defendants and codefendant Arroyo were arrested within 20 minutes after the shooting in a brown Buick Electra 225 with Illinois license plate QA2807. The Buick was stopped approximately two miles from where the shooting occurred. Immediately after their arrest, Santiago and Gutierrez were taken to a police station where they were identified in a lineup by the Kidd brothers.

Police officer William Jaconetti testified that near the scene of the arrest he found a 1973 maroon LaMans with a warm engine. Several weapons were recovered from the trunk of the LeMans. Two of the weapons, a .357 magnum and a .38 special, were positively identified as the murder weapons. Also found in the trunk was a ski mask similar to the one described by witness Yvonne Sosa.

Dr. Eupie Choi of the Cook County medical examiner's office testified that the victim's body had five entry wounds, two of which were on the back portion of the head. Two more entry wounds were on the right side of the upper arm. The last entry wound was on the victim's right buttock.

Defendants Gutierrez and Santiago presented no evidence on their behalf. Rosario presented alibi testimony of his brother Oscar and a friend, Miguel Diaz.

I

■■ ■ Defendants Gutierrez and Santiago argue that the circumstantial evidence presented at trial was insufficient to prove their guilt beyond a reasonable doubt. We disagree. A valid conviction may be sustained entirely upon circumstantial evidence. (*People v. Weaver* (1982), 92 Ill. 2d 545, 555, 442 N.E.2d 255.) It is necessary, however, that " 'the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime.' " *People v. Purnell* (1984), 126 Ill. App. 3d 608, 618, 467 N.E.2d 1160.

■■ In the present case, the State has met its burden of proof. The evidence showed that shortly prior to the shooting Santiago was talking to Gutierrez as Gutierrez sat inside a maroon Pontiac LeMans within one block of where the murder occurred. The backs of the three men whom Sonya Rodriguez later saw fleeing the murder scene and running towards an alley closely matched the physical and clothing descriptions of all three defendants on the date of the occurrence. Defendants were also observed running down the alley by Yvonne Sosa, who was able to view their faces for a brief time in broad daylight when they passed within 10 feet of her window. She noticed that Santiago and Rosario were carrying guns. At trial, Sosa positively identified all three defendants as the men she saw fleeing in the alley. Additionally, the Kidd brothers testified they saw the three defendants emerge from the alley after the shooting and jump into an awaiting Buick Electra which was used as the getaway car. Both brothers were able to see Santiago's face when he pointed his finger and yelled at them. Finally, the murder weapons were recovered from the Pontiac LeMans in which Gutierrez had been sitting shortly before the murder.

■■ Gutierrez, noting that he was not seen holding a gun, argues that the evidence failed to establish that he was legally accountable for the murder. We do not agree. " 'Where one attaches himself to a group bent on illegal acts which are dangerous or homicidal in character, or which will probably or necessarily require the use of force and violence that could result in the taking of life unlawfully, he becomes criminally liable for any wrongdoings committed by other members of the group in furtherance of the common purpose, or as a natural or probable consequence thereof, even though he did not actively participate in the overt act itself.' " (*People v. Bell* (1981), 96 Ill. App. 3d 857, 864, 421 N.E.2d 1351.) Proof of a common purpose need not be supported by words of agreement but can be drawn from the circumstances surrounding the commission of an act by a group. (96 Ill. App. 3d 857,

864.) Here, we believe that the evidence, as described above, provided a sufficient basis for the jury to conclude that defendant was guilty under an accountability theory.

Santiago urges that the jury should have found him innocent because the trial court found codefendant Arroyo innocent at his bench trial. It is well settled, however, that "the failure to convict a codefendant does not raise a reasonable doubt as to the guilt of the other defendant unless the evidence presented against both parties is identical in all respects." (*People v. Hiller* (1980), 92 Ill. App. 3d 322, 325, 415 N.E.2d 1202.) In the instant case, the evidence presented against Santiago was considerably different from the evidence presented against codefendant Arroyo. Arroyo was not identified by witnesses as one of the three men fleeing from the murder scene. Nor was he seen entering the getaway car. The evidence against Arroyo showed only that he was arrested shortly after the murder in the company of the other three defendants. Additionally, his fingerprints were found on a gun which was discovered by police in the trunk of a maroon car that had been connected to the murder by witnesses. The gun, however, was not one of the two guns which had been positively identified as the murder weapons. Furthermore, the fingerprint expert could not determine when Arroyo's fingerprints had been placed on the gun. Hence, it is apparent that there was substantially less inculpatory evidence adduced against Arroyo than against Santiago.

## II

Gutierrez next argues that the trial court improperly found that the arresting officers had probable cause to arrest him. Defendant urges that since the lineup identifications by the Kidd brothers and Yvonne Sosa were a direct result of the alleged illegal arrest, the trial court erred in denying his motion to suppress the identifications. We find no merit to this argument.

To determine whether a police officer has probable cause to arrest an individual, it must be shown that the facts and circumstances within his knowledge "are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense." (*People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356; *People v. Sanchez* (1982), 107 Ill. App. 3d 240, 248, 437 N.E.2d 744.) Under this standard, courts have observed that whether or not probable cause exists depends on the totality of the circumstances known to the arresting officer at the time of the arrest. The probable cause determination should not be unduly technical but instead must rely on probabilities measured by the

practical considerations of everyday life. (*People v. Sanchez* (1982), 107 Ill. App. 3d 240.) Once a trial court has denied a motion to quash an arrest for lack of probable cause, a reviewing court should not disturb that court's ruling unless it is manifestly erroneous. *People v. Calderon* (1980), 85 Ill. App. 3d 1030, 407 N.E.2d 840.

■■ In the present case, the trial court's determination of the probable cause issue is not manifestly erroneous. At the suppression hearing, arresting officer William Dorsch testified he received a "flash" message over his police radio that a shooting had just occurred and that the offenders were in a brown Buick Electra with a partial license plate number of QA24 and two more unknown numbers. Only five minutes after receiving the flash message, Dorsch saw defendant Santiago, whom he had seen on approximately 50 prior occasions, in a car matching the above description. The car contained three other passengers, one of whom was defendant Gutierrez. Dorsch observed the car only two miles from where the shooting occurred. Prior to stopping the car, Dorsch notified police communications that he had observed the vehicle in question and was going to attempt to stop it. Under similar facts and circumstances, this court has held that probable cause existed to make an arrest. (See, *e.g., People v. Romo* (1980), 85 Ill. App. 3d 886, 407 N.E.2d 661; *People v. Turner* (1975), 32 Ill. App. 3d 221, 336 N.E.2d 49.) Given that the arrest of Gutierrez was made with probable cause, the trial court properly denied his motion to suppress.

### III

■■ Santiago contends he was denied his constitutional right to a fair and impartial jury of his peers because the State systematically used their peremptory challenges during *voir dire* to exclude blacks from the jury. Our supreme court, however, has made it clear that proof of a systematic and purposeful exclusion of blacks from juries in case after case because of race is required before a prosecutor's use of peremptory challenges could be found to violate a defendant's right to a fair and impartial jury. (*People v. Williams* (1983), 97 Ill. 2d 252, 454 N.E.2d 220; see also *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202; *People v. Loggins* (1985), 134 Ill. App. 3d 684.) Santiago has failed to make the showing required by the supreme court, and, thus, we are unable to find that his constitutional rights were violated.

### IV

Santiago contends he was denied his right to effective assistance of counsel due to the State's failure to disclose its witnesses' ad-

dresses. He alleges he was prejudiced because his counsel, by not having the addresses, could not effectively represent him.

■■ Illinois Supreme Court Rule 412(a)(i) provides: "[T]he state shall, upon written motion of defense counsel, disclose to defense counsel *** the names and last known addresses of persons whom the state intends to call as witnesses ***." (87 Ill. 2d R. 412(a)(i).) The purpose of this rule is to prevent surprise and afford an opportunity to combat false testimony. (*People v. Anderson* (1977), 46 Ill App. 3d 607, 614-15, 360 N.E.2d 1371.) However, Rule 412(i) provides that the court may deny disclosure under that rule if it finds that "there is substantial risk to any person of physical harm, intimidation, bribery, economic reprisals, or unnecessary annoyance or embarrassment resulting from such disclosure which outweighs any usefulness of the disclosure to counsel." 87 Ill. 2 R. 412(i).

In the present case, the State informed the trial court in December 1981, approximately one year prior to trial, that the witnesses' lives would be endangered if their addresses were disclosed. The State, however, promised to make the witnesses available for interviews by defense counsel prior to trial. After hearing arguments, the trial court determined that no discovery problem would arise if the State's witnesses were made available to defendant before trial. The record reflects that on April 15, 1982, counsel for Santiago agreed to such an arrangement. At that time, the following colloquy occurred:

> "[ASSISTANT STATE'S ATTORNEY]: At this time I would inform the court I did speak to Mr. Schlesinger [Santiago's attorney] on the telephone, I believe yesterday, and we agreed to arrange for a date upon which he can interview or speak with the witnesses in this case.
>
> We agreed on, I believe, next Wednesday, a time, on that date, to be set within the next few days when I speak with the witnesses to see what is mutually convenient.
>
> [DEFENDANT SANTIAGO'S ATTORNEY]: That's correct, Judge."

■■ Santiago now asserts that it was not until the eve of trial that the State's witnesses were made available. He has failed, however, to cite any evidence in the record to support this allegation. Moreover, we note that defendant has the burden of showing that surprise or other prejudice resulted from any noncompliance with the requirement that the State supply the names and addresses of prospective witnesses. (*People v. Anderson* (1977), 46 Ill. App. 3d 607, 360 N.E.2d 1371.) Absent such a showing, a reviewing court will not find an abuse of discretion. (*People v. Ziehm* (1983), 120 Ill. App. 3d 777,

458 N.E.2d 588.) Here, Santiago has not demonstrated how the alleged failure to produce the witnesses' addresses prejudiced him. At trial, defense counsel vigorously cross-examined each of the State's witnesses. Santiago has failed to show how the outcome would have been any different even if his counsel had the addresses.

Under the foregoing facts and circumstances, we are unable to find any abuse of discretion as to this issue.

## V

■■■ Gutierrez and Santiago allege they were denied a fair trial as a result of certain prosecutorial misconduct at trial. First, Gutierrez objects to the State asking arresting officer Dorsch a series of questions concerning how he had known the defendants prior to the time of their arrest. Gutierrez asserts that the questions constituted the foundation for the following allegedly improper comment in closing argument:

> "[ASSISTANT STATE'S ATTORNEY]: The first car is a Buick Electra 225, 1973, four to six male Latins inside, partial license number QA 28—, 24—. The other car is a 1973 LeMans, two-door.
>
> The call went over the air. Officer Dorsch, who testified before you, was in the Thirteenth District Tactical Unit, an officer for a number of years. When he heard that call, he knew where to go. He knew the location, he knew the people, he knew the cars. He went into the area of Hirsch and Rockwell."

Gutierrez argues that the questions and comment improperly suggested to the jury that he had engaged in prior criminal conduct.

With regard to the questioning complained of, the trial court sustained defense counsel's objection to each such question and subsequently instructed the jurors that they were to disregard the questions. The court's actions cured any error which could have resulted. *People v. Clay* (1984), 124 Ill. App. 3d 140, 463 N.E.2d 929; *People v. Outlaw* (1979), 75 Ill. App. 3d 626, 394 N.E.2d 541.

■■■ With respect to the above closing argument comment, we find that Santiago has waived this issue by failing to specifically raise it in his post-trial motion. The motion merely alleges that the assistant State's Attorney made "prejudicial inflammatory and erroneous statements in closing argument designed to arouse the prejudices and passions of the jury." This court repeatedly has held that such a post-trial motion does not preserve the issues for review. *People v. Camp* (1984), 128 Ill. App. 3d 223, 232-33, 470 N.E.2d 540; *People v. Thomas* (1983), 116 Ill. App. 3d 216, 220, 452 N.E.2d 77.

■■■ ■ Under the plain error rule (87 Ill. 2d R. 615(a)), this court may elect to review the asserted error after a finding that the evidence is closely balanced and that the error had prejudiced substantial rights of the defendant. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) Invocation of the plain error rule is not necessary in this instance for the following reason. At trial, when officer Dorsch was testifying as to the circumstances of the arrest, the prosecutor asked him, "Did you know the individuals [the defendants]?" and he answered, "Yes, I did." No objection was made at this time by defense counsel. As such, the comment about Dorsch knowing the people and knowing where to go was based upon admissible evidence and the reasonable inferences drawn from that evidence. Such comment, therefore, was not improper. *People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 721, 431 N.E.2d 1154.

Gutierrez additionally objects to the following comment in closing argument:

"You have heard a lot about rights. Go-Go had some rights. If you don't believe Evon Sosa and Nina Thompson, and Charles Kidd, who happened to live in that neighborhood, some of the people you don't care for, you will create the zone of terrors in the city."

Gutierrez has waived review of the above comment by failing to specifically refer to it in his post-trial motion. (*People v. Camp* (1984), 128 Ill. App. 3d 223, 232-33, 470 N.E.2d 540.) Furthermore, the trial court promptly sustained defense counsel's objection to the remark, thereby curing any possible prejudice. *People v. Clay* (1984), 124 Ill. App. 3d 140, 150, 463 N.E.2d 929.

We turn next to the prosecutorial misconduct alleged by Santiago. He argues first that the State improperly reduced the concept of reasonable doubt to a minor detail during *voir dire*. The record reveals that during *voir dire*, the assistant State's Attorney believed that one of the jurors indicated some confusion as to the State's burden of proof. He proceeded to clarify the burden and then questioned a prospective juror as follows:

"Q. Mr. Thompson, are you aware that the burden of proof that we have in a murder charge is exactly the same burden of proof we would have if a bicycle is stolen? Do you understand?

A. Yes."

He asked another juror the following questions:

"Q. And that that is the same burden that is imposed on the People of the State of Illinois?

[DEFENDANT SANTIAGO'S ATTORNEY]: Judge, I'm go-

ing to object to counsel instructing the juror to what the burden is in other cases.

THE COURT: Well, he may inquire.

[ASSISTANT STATE'S ATTORNEY]: Thank you, Judge.

[ASSISTANT STATE'S ATTORNEY]: Q. This is the same burden in this case as in any other criminal case. You understand that?

A. Yes.

Q. It's not like a civil case. You understand that?

A. Yes, sir, I do."

■■■■ The scope of questions in *voir dire* rests within the sound discretion of the trial court. (*People v. Zehr* (1982), 110 Ill. App. 3d 458, 442 N.E.2d 581.) In the present case, Santiago failed to object at trial to the comment that the burden of proof in a murder case is the same as the burden in a bicycle theft case. Nor did he specifically refer to the comment in his post-trial motion. Consequently, this issue is waived on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) While we do not believe that this comment resulted in the degree of prejudice necessary to require reversal under the plain error doctrine, we must point out that this type of remark is not to be condoned. Similar comments have been held to be improper where they were made during closing argument and, when combined with several other instances of prosecutorial misconduct, warranted reversal. (*People v. Scaggs* (1982), 111 Ill. App. 3d 633, 637, 444 N.E.2d 674.) In this case, the comment occurred at a time when the risk of prejudice was not as great and we are unable to conclude that the comment, standing alone, warrants reversal.

We find no impropriety as to the remaining comments quoted above. Similar remarks have been held to be proper when they occurred in closing argument. *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301.

■■■ Santiago next contends he was denied a fair trial by certain improper comments by the State in closing argument. The State responds, and we agree, that Santiago has waived this issue on appeal by failing to specifically raise it in his post-trial motion. (*People v. Camp* (1984), 128 Ill. App. 3d 223, 232-33, 470 N.E.2d 540.) For purposes of determining whether plain error occurred, we will discuss below only those comments which had the greatest potential for prejudicial effect on the jury.

■■■ Santiago argues he was prejudiced by the State's characterization in closing argument of codefendant Rosario's alibi witness, Miguel Diaz, as a "liar." This argument must fail given the fact that Diaz

did not testify for Santiago. Moreover, the comment was a reasonable inference based upon the testimony presented at trial. Diaz' testimony conflicted with Rosario's own statement to the police and, as such, the "liar" characterization was proper. *People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 721, 431 N.E.2d 1154.

Santiago also objects to the following comments:

"[ASSISTANT STATE'S ATTORNEY]: Do any of the people in this jury, for even one second, believe that that man and I told witnesses to lie, told witnesses to get on the stand and go over the testimony and make up a story?

[DEFENDANT SANTIAGO'S ATTORNEY]: Objection.

THE COURT: Objection sustained.

[ASSISTANT STATE'S ATTORNEY]: To make up a story— [Defendant Santiago's Attorney] just said was rehearsed the testimony.

THE COURT: There was an objection. You are to argue on the evidence.

[ASSISTANT STATE'S ATTORNEY]: Do you believe we told the witnesses what to do? Then you find them all not guilty, and cut every one of them loose.

Do you think that is what we are about? What the prosecution in this case is about? If you think like that, find them not guilty, let them go free *** ."

We do not find the above comments to be improper. Throughout Santiago's closing argument, his attorney indicated that the State had coached their witnesses in order to build a case against Santiago. These comments invited the State's response above that they had not fabricated evidence or asked witnesses to lie. Because Santiago's counsel invited the comments now complained of, he cannot now claim prejudice. *People v. Clay* (1984), 124 Ill. App. 3d 140, 149, 463 N.E.2d 929.

Accordingly, we conclude that no plain error resulted from the closing argument comments objected to by Santiago.

## VI

Defendants Gutierrez and Santiago urge that their rights to due process and confrontation were violated because they were denied the opportunity to prepare for cross-examination and rebuttal of a witness presented by the State in aggravation. Defendants argue that they were not informed until the commencement of the hearing in aggravation that the witness, Joe Dawson, would testify. Dawson was incarcerated at the Cook County jail's Cermak Hospital the same time as Santiago. He testified that Santiago told him that on the day of the

murder, Santiago and four of his partners were riding along and "saw this fellow that looked like someone that had shot him a year prior, so they parked the car and went down an alley." The victim was changing a tire, and they called out to him. When the victim turned around, "he received a gunshot to the back and one to the side of the head." Santiago told Dawson that after looking at a picture of the victim during trial, he had "some doubt in his mind that the victim was, in fact, the gentlemen that had shot him a year prior." Dawson further testified as to post-conviction death threats made by Santiago against one of the assistant State's Attorneys and his family, and that Gutierrez had concurred with these threats.

Initially, we observe that discovery in the sentencing stage is not mandatory. (*People v. Siefke* (1981), 97 Ill. App. 3d 14, 421 N.E.2d 1071.) In *Siefke*, the defendant alleged error in the admission of testimony at the sentencing hearing from a witness who had not been disclosed to him prior to the hearing. We found no error, reasoning as follows:

> "There is no general constitutional right to discovery in a criminal case, and prior disclosure of the names of adverse witnesses is not constitutionally required to ensure a fair trial. (*Weatherford v. Bursey* (1977), 429 U.S. 545, 559-60, 51 L. Ed. 2d 30, 42, 97 S. Ct. 837, 846-47.) Discovery is afforded criminal defendants in Illinois by statute (Ill. Rev. Stat. 1979, ch. 110A, pars. 411-15), and these discovery rules are clearly designed for use in connection with criminal trials. (*People v. DeWitt* (1979), 78 Ill. 2d 82, 86.) According to Rule 411 (Ill. Rev. Stat. 1979, ch. 110A, par. 411), discovery rules are 'applied in all criminal cases wherein the accused is charged with an offense for which, upon conviction, he might be imprisoned in the penitentiary.' Where, as here, the defendant is at the sentencing stage of a felony prosecution, he stands already convicted, not accused, of the offense and is entitled to fewer procedural safeguards than those afforded the unconvicted defendant. See *DeWitt*, at 85." (97 Ill. App. 3d 14, 16.)

Hence, under *Siefke*, the State was not required to inform defendants in advance that Dawson would testify at the sentencing hearing.

Defendants maintain they were prejudiced by the court's refusal to grant their request for a continuance in order to investigate Dawson's background. We disagree. The record shows that Santiago's attorney vigorously and effectively cross-examined Dawson, conducting a 58-page inquiry into his credibility, reliability and possible bias. He questioned Dawson about, among other things, his use of narcotics and al-

cohol, his need for psychiatric help and the fact that he did not tell the police about the threats immediately after he found out about them. Gutierrez' attorney also had an opportunity to cross-examine Dawson. During mitigation, both defendants asked the trial court not to consider Dawson's testimony because it was "not corroborated by any other evidence, [made by] a man under psychiatric care, under medication at the time of this occurrence and said conviction, who, a twice-convicted felon, and evasive as to his other involvement with the law, who was admittedly using narcotics at the time that he came to this State, and to this courtroom, to tell us what he did."

The record discloses that the trial court, in accordance with defendants' above request, did not rely on Dawson's testimony in determining the sentences. Rather, the court weighed Dawson's testimony against all of the other aggravating evidence and indicated that even without his testimony, defendants would still have received the same sentence. Specifically, the court stated:

"*** [E]ven eliminating, perhaps, the very fact of the aggravating witness, who testified here, and just taking the nature of the offense, being an out-right murder, outrageous type of crime, it was not a one on one situation, but it was a collective, criminal activity of these three defendants, who acted in unison, in order to accomplish this kind of a result, which is disturbing to our very society."

Under the foregoing circumstances, we cannot conclude that defendants were prejudiced by the court's refusal to grant a continuance.

## VII

■■■ ■ All three defendants contend their sentences are excessive. We disagree. The record reveals that the trial judge found that the murder in this case was accompanied by brutal and heinous conduct and stated, "I do believe that an extended sentence is appropriate at least to two of the individuals here." The court then gave Gutierrez an extended-term sentence of 50 years and Santiago an extended-term sentence of 70 years. Rosario was sentenced to 40 years in prison which is the maximum normal sentence for murder (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1), and also the minimum extended term (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—2).

Under Illinois law, the trial court is empowered to give an extended-term sentence if the court finds "that the [offense] was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—2(a)(l).) Sentencing decisions are matters of judicial discretion, and as long as the sentence

imposed is within the statutory limits, we may not exercise our power to reduce it absent a finding that the court has abused that discretion since the trial court has a better opportunity to acquire information about the defendant and assess factors in aggravation and mitigation. *People v. Gallardo* (1983), 112 Ill. App. 3d 764, 445 N.E.2d 1213.

In the present case, we believe the trial court correctly determined that defendants' behavior was of an exceptionally brutal and heinous nature so as to justify an extended-term sentence. The evidence established that defendants' actions were cruel, cold-blooded and devoid of mercy. They approached the victim in broad daylight from the rear and opened fire on him with high powered weapons. The testimony of Detective John Howell at the sentencing hearing disclosed that defendants' probable motive was revenge. His testimony indicated that defendants mistakenly believed the victim had wounded Santiago one year earlier. While hospitalized after that shooting, Santiago refused to give Howell any information regarding his possible assailant other than the fact that a "Latin King" had shot him. Santiago informed Howell that retribution to the shooter would be "kept on the street" and that his gang would handle the shooter themselves. Santiago also told Howell that he ran the Cobra street gang. The victim was not a gang member. Hence, what apparently started out as a revenge killing resulted in the murder of an innocent person who was minding his own business in front of his home. Moreover, testimony by witnesses that they viewed the victim's bullet-riddled body as it lay on the ground "jumping, kicking and twitching" shows that the victim suffered before he died.

Rosario contends his 40-year prison sentence was excessive because it did not take into account the fact that he was a first offender, nor provide for rehabilitation. He argues that he was only 17 years old when he was arrested and that no positive link was shown between him and the Cobra street gang, the gang in which his codefendants were involved.

We must reject Rosario's argument. The trial court justifiably determined that the crime in this case was of an extremely brutal and heinous nature, thereby making Rosario eligible for an extended-term sentence of 40 to 80 years. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—2.) Rosario received the most lenient sentence of the three defendants. The court sentenced him to 40 years which, as noted above, is the minimum extended-term sentence for murder as well as the maximum sentence under the normal sentencing scheme. In so doing, it is apparent that the court gave due consideration to Rosario's prior criminal background and possibility of rehabilitation.

Next, Gutierrez argues that his 50-year sentence was an abuse of discretion because it was 10 years longer than Rosario's sentence. The record shows, however, that Gutierrez has a more extensive record of criminal activity than Rosario. Gutierrez, who was 22 years old at the time of sentencing, was convicted in 1979 of aggravated assault and aggravated battery, and in 1981 he was convicted of unlawful use of weapons and aggravated battery. He received two years in prison for the 1981 aggravated battery conviction and had been released from the penitentiary less than one month prior to the instant offense. The evidence in aggravation further established that Gutierrez was a member of the Cobra street gang. Given Gutierrez' background and the brutal and heinous nature of the crime, his sentence cannot be considered an abuse of discretion.

Finally, Santiago argues that his 70-year extended-term sentence is disproportionate to the sentences received by his codefendants. Santiago, who was 23 years old at the time of sentencing, notes that a prior conviction for possession of marijuana has been his only felony conviction. He argues that Gutierrez had a worse criminal record and his sentence was 20 years shorter than his.

In addressing Santiago's argument, we note first that the record shows he had convictions in 1978 and 1979 for the unlawful use of weapons. Additionally, there was evidence that Santiago, who was the oldest of the three defendants, admitted to Detective Howell that he was the leader of the Cobras street gang. He also had a "keep it on the street" attitude which, as the trial court observed, was reprehensible. Furthermore, the defendant's relative degree of participation in the crime is also a factor to be considered in sentencing. (See *People v. Clay* (1984), 124 Ill. App. 3d 140, 463 N.E.2d 929.) Here, as the trial court indicated, Santiago's involvement as the gun-wielding leader of the group was more egregious than the other defendants' involvement. Given the above-mentioned facts and circumstances, we cannot conclude that the trial court abused its discretion in sentencing Santiago.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.