THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
HAROLD MILLER, JR., Defendant-Appellant.

Fourth District   No. 4—85—0311

Opinion filed March 5, 1986.

Townsend, Judge, presiding.

Daniel D. Yuhas and Deborah L. Rose, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn Klingler, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MORTHLAND delivered the opinion of the court:

Charged by information with six counts of armed robbery in violation of section 18—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 18—2(a)), defendant by agreement in April of 1982 pleaded guilty to two counts, the remaining four counts against him were dismissed. The circuit court of Champaign County then sentenced defendant to concurrent 18-year terms of imprisonment.

On January 29, 1985, defendant filed a *pro se* petition for post-conviction relief, later amended by court-appointed counsel on March 14, 1985. The petition generally assailed the performance of the defendant's appointed counsel at trial, Assistant Public Defender Michael Jones. The defendant cited counsel's alleged failure to adequately prepare for trial; failure to advise defendant of the maximum sentence that could be imposed; failure to correct purported errors concerning defendant's prior criminal record; failure to file appropriate pretrial motions; and failure to allow defendant to exercise his right of appeal. Defendant thus contended he was denied effective assistance of counsel, and requested that the guilty plea be vacated. After a hearing held April 30, 1985, the trial court denied defendant's petition.

The gravamen of defendant's argument on appeal is a point first raised in closing argument during the post-conviction relief hearing: that attorney Jones represented defendant even in light of a potential conflict of interest, where Jones was subject to "subtle influence[s]" which precluded his objective and vigorous representation. Indeed, this case involves an interesting coincidence. While employed in the public defender's office, Jones participated in a "ride along" program with the Champaign police department to help understand police testimony. Once every four months, Jones would accompany police officers in a squad car for an evening. In January of 1984, the squad car Jones was riding in responded to a robbery in progress. The police arrived on the scene after the robbery, and no one was apprehended. However, Jones heard a description over the police radio of two men

allegedly involved in the offense. One of those descriptions matched the defendant.

Because Jones was present at the scene of one of three armed robberies for which defendant was eventually charged, defendant argues on appeal that "subliminal forces," however marginal or subtle, operated to affect counsel's judgment and objectivity. Defendant asserts that Jones could have been called as a witness in the matter. Defendant further contends in his brief on appeal that he was entitled to vigorous representation here, but that such representation was diminished by the defense attorney's "even minor involvement in the State's business of gathering evidence ***." Defendant concludes that counsel should have made a disclosure of the potential conflict in order to obtain a knowing waiver. As he failed to do so, defendant maintains his guilty plea should be vacated.

Defendant's contentions are wholly without merit and purely conjectural. We find no conflict in the mere fortuitous happenstance that Jones was in a squad car which responded to one of the armed robberies with which the defendant was subsequently charged. No arrests were made that night; Jones did not observe anyone fleeing from the scene of the crime. The descriptions broadcast over the radio became part of the police record which any attorney would have access to. Further, we do not believe Jones could have been called as a witness for the State at trial, as defendant maintains. Jones was not listed as a prospective witness in the police report.

Rather, as part of his duties with the public defender's office, Jones rode in a squad car one night pursuant to a program designed to aid in understanding police procedure, a laudable goal. In making attorneys employed in the public defender's office more knowledgeable in this regard, the ultimate benefit of the program is conceivably better representation of clients. We should not strike down a prospective benefit by holding that a conflict of interest is inherent in accompanying police and coincidentally hearing a description matching a future client. Read too broadly, it would severely restrict the availability of such a program in smaller communities. We are also mindful that, where the facts do not establish a *per se* conflict of interest, it is for the defendant to show an actual conflict to obtain a new trial. (*People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525.) Defendant has not done so here.

Nor are the cases cited by defendant persuasive. In *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569, the supreme court held that the defendant was prejudiced by a conflict of interest where his appointed counsel had appeared earlier in the same criminal proceeding

on behalf of the State's Attorney's office. The court cited "inconsistent duties" thereby arising, a potential conflict of interest even though counsel's actual representation of defendant exhibited due diligence, "subtle influences" acting on counsel and a "subconscious desire" to avoid an adversarial confrontation with his former co-workers or employer. These concerns, however, did not arise in the instant matter. Furthermore, *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, as relied upon by the defendant, is similarly unavailing. In that case, the court found a possible conflict of interest where defendant's court-appointed counsel had previously represented both the jewelry store the defendant was accused of burglarizing and its owner. We find no such conflict here.

■■■ Next, we deal with defendant's allegations of ineffective assistance of counsel raised both in the post-conviction petition and on appeal. As a perfunctory matter, we note the two-part test to determine whether counsel's performance was so deficient as to deprive a defendant of his constitutional rights: (1) counsel's performance was incompetent; and (2) but for counsel's errors, the results probably would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005; *People v. Krankel* (1985), 131 Ill. App. 3d 887, 476 N.E.2d 777.) Ineffective assistance must also prejudice the defendant. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Royse* (1983), 99 Ill. 2d 163, 457 N.E.2d 1217.) Effective assistance means competent, though not perfect and successful, representation. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64.) The totality of circumstances must be considered (*People v. Davis* (1981), 103 Ill. App. 3d 792, 431 N.E.2d 1210); errors in judgment, tactics or strategy will not be reviewed, however (*People v. Eddmonds* (1984), 101 Ill. 2d 44, 70, 461 N.E.2d 347, 360, *cert. denied* (1984), 469 U.S. 894, 83 L. Ed. 2d 207, 105 S. Ct. 271). The burden is on the defendant to prove actual incompetence resulting in prejudice to his case, and findings of the trial court will be upheld unless manifestly against the weight of the evidence. *People v. Bracey* (1972), 51 Ill. 2d 514, 283 N.E.2d 685.

Defendant testified at the hearing on the post-conviction petition that attorney Jones told him the State's Attorney's office had made his conviction a priority, and that they would try him "once a month" on each of the six counts to obtain a 30-year sentence for each. Defendant believed he would therefore receive a 180-year term if he went to trial. Also, defendant pleaded guilty to unrelated charges of

possession of cannabis and unlawful use of a handgun on advice of counsel. Although he and his counsel had hoped for probation, the court imposed a two-year sentence. Defendant stated he then wanted to bring forth witnesses at trial who could testify that he acquired this particular gun after the robberies in question had been committed, but Jones advised against even raising the matter. Defendant testified that he wanted to be put in a lineup to see if anyone would identify him, but no such lineup was held. He stated his attorney told him the State had witnesses who would identify him, and that he should plead guilty. Defendant further stated that, after his morning sentencing on the gun possession charges, Jones informed him that the State had offered concurrent 18-year terms in return for a plea of guilty. Because he believed his only alternative was consecutive 30-year terms totalling a maximum of 180 years, defendant agreed to accept the offer, and pleaded guilty that afternoon. Defendant recounted that his attorney only spoke with him about his case on four occasions. Finally, defendant related that Jones told him an appeal would be pointless because he had already admitted his guilt.

Jones testified that he had four meetings with the defendant during which they discussed his case. He stated he did inform defendant that the State's Attorney's office had put a priority on his case, and wanted to maximize the time defendant would serve. He further stated he discussed the maximum penalty with the defendant. He also reviewed with the defendant the police reports, descriptions, and potential State witnesses, including a co-conspirator, and gave his opinion that defendant would be convicted if he went to trial. Jones also related his plea bargain negotiations with the State's Attorney, who initially refused to accept any plea. Later, however, the State's Attorney offered 30 years, then 25, then 20. After the sentencing on the unlawful weapons charge, the prosecutor agreed to an 18-year term. Jones stated that, to his surprise, the defendant readily accepted this offer when it was related to him.

■ Based upon the foregoing, we find no incompetent assistance of counsel, and no prejudice enuring to the defendant as a result. Attorney Jones actively reviewed defendant's case and, in his judgment, recommended not going to trial. Jones met with defendant on several occasions to discuss the merits of his case, and the evidence the State had against him. Counsel entered into plea bargaining negotiations to obtain the best possible sentence for defendant, getting the prosecutor to back off from his original stance of no negotiations at all. He finally got the prosecutor to go from a 30-year offer down to a settlement of concurrent 18-year terms on two of the six counts. Without

428

such active plea bargaining, defendant could conceivably have received a much longer sentence. The prosecutor's office had clearly denoted defendant's case as a "number one priority." Apparently, defendant misunderstood the maximum sentence he might obtain. However, defendant has shown no actual incompetence of counsel, nor has he sufficiently indicated to us how the result of his case would have been different.

Accordingly, the order of the circuit court of Champaign County, denying defendant's petition for post-conviction relief, is affirmed.

Affirmed.

WEBBER and GREEN, JJ., concur.