THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDY POWELL, Defendant-Appellant.

First District (2nd Division)   No. 1—86—2526

Opinion filed February 28, 1989.—Rehearing denied April 4, 1989.

Michael J. Pelletier and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Patricia Y. Brown, and James M. Sullivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant was found guilty by a jury of attempt (murder), aggravated battery and armed violence, and sentenced to 25 years' imprisonment. He appeals, raising the following issues: (1) whether he was denied his right to the effective assistance of counsel; (2) whether he was denied a fair trial by the prosecutor's cross-examination and remarks during closing argument; (3) whether the jury was improperly instructed on attempt (murder); (4) whether the trial court erred in denying his motion for a new trial; and (5) whether the trial court erred in denying him access to the complaining witness' mental health records.

Defendant was charged with attempt (murder), two counts of aggravated battery and armed violence against Arnold Wayne. At trial Wayne testified as follows: Defendant was a friend of Joseph Barrett, Wayne's brother-in-law, and Wayne had known defendant for some time. Ten years prior to the occurrence which forms the subject matter of this case, defendant had insulted Wayne's wife, Cleo, but had

apologized after Wayne approached him about it. Defendant had gone to Wayne's home three or four times since then, looking for Barrett. On one of these occasions, one month prior to the incident comprehended in the case at bar, Wayne had told defendant not to come to his home any longer.

On February 1, 1986, Wayne went to a tavern where he had alcohol, cocaine and heroin over the course of the evening. He claimed, however, not to be intoxicated. Barrett came over some time after Wayne arrived home, and shortly thereafter the doorbell rang. When Wayne's wife used the intercom to talk to the person at the door, Wayne recognized defendant's voice as that of the individual asking for Barrett. Barrett went to the backyard to talk to defendant, and, after five minutes, Wayne followed. He opened the door, cursed at defendant, and began walking towards him as defendant pulled out a pistol. Wayne was not armed, but he continued walking toward defendant and punched him, knocking him into a fence. At this point Barrett ran off. Wayne tried to get the gun away from defendant, but defendant bent down, took the gun between his legs and attempted to shoot Wayne. Wayne slipped and fell to the ground, and, as he lay on his back, defendant shot him four times, saying "What do you think, I'm a punk or something?" Wayne arose and tried to chase defendant, who then turned and pulled the trigger a number of times, but the gun failed to fire. Wayne stopped in front of his home and Barrett took him to the hospital.

On cross-examination, Wayne stated he did not normally use heroin and cocaine and acknowledged that he failed to tell the police about his use of drugs on the night of the incident. He also testified that he did not regularly handle guns, but that he knew the difference between types of guns.

Dr. Khaja testified that he was the physician on duty in the emergency room when Wayne was brought in. Wayne had suffered a gunshot wound in the right lower back, which passed through his body and exited just below the navel, and three gunshot wounds to his right arm just below the elbow. Khaja also testified that Wayne was coherent and that a blood sample indicated that Wayne had engaged in social drinking but was not medically intoxicated. Officer Charles Popielarz testified that he spoke with Wayne in the hospital emergency room and that he appeared to be lucid.

Detective John Paladino testified that he arrested defendant at his home on the night of February 1, 1986. Defendant's mother admitted Paladino and told him that defendant was in the basement and, as he descended the stairs, he saw defendant run from a utility

room into a bedroom. Paladino ran after defendant and saw him place a handgun under a mattress of a bed, which Paladino then recovered.

Detective Harold Huffman testified that he interviewed defendant in the early morning hours of February 2, 1986. Defendant denied being anywhere near Wayne's home on the previous evening and denied shooting a gun in the last three months. Huffman then had a gun residue test performed on defendant's hands, which indicated that he had recently handled a gun or had been in close proximity to one when it was discharged.

Defendant testified that he had previously purchased cocaine from both Wayne and Barrett. When he went to Wayne's home on February 1, 1986, defendant was looking for Barrett. Defendant was talking with Barrett in the backyard when Wayne rushed out of the house carrying a shiny object, which appeared to be a gun, in his right hand. Wayne stumbled and staggered, and appeared to be drunk, and yelled something like "I thought I told you that I don't want you by my backyard." Wayne hit defendant on the head with the gun and, as he attempted to do so again, defendant blocked the shot with his hand, Wayne lost control of the gun and dropped it. Both men reached for the gun, defendant grabbed the barrel while Wayne grabbed the trigger, and three or four shots went off while they were struggling. When defendant realized Wayne had been shot, he ran off toward the front of the house while Wayne shot at him. Two or three hours later, four detectives came to defendant's home and arrested him. He testified that he did not have a gun in his possession when arrested.

The defense also called Jezelle Perdue, defendant's fiancee, to testify about a conversation she had with Cleo Wayne about a month and a half after the occurrence. Following an objection by the State, the court called a sidebar and asked for an offer of proof. Defense counsel indicated that Perdue would testify that Cleo Wayne told her that at the time of the incident Arnold Wayne had come out of the house with a pistol and had hit defendant on the head. The court excluded the testimony on the ground that the defense had failed to lay a foundation for such impeachment during cross-examination of Cleo Wayne.

Defendant appeals from the jury verdict convicting him on all counts.

OPINION

Defendant first argues that he was denied his right to the effective assistance of counsel, contending that his trial counsel was incompetent. The first example defendant cites is his counsel's interrogat-

ing him with reference to his previous convictions for attempt (murder) and robbery, in violation of a ruling on defendant's motion *in limine* that the jury should not be made aware of the names of these offenses because of their potential prejudicial effect. (*People v. Mitchell* (1981), 98 Ill. App. 3d 398, 424 N.E.2d 658.) Defense counsel asked the following:

"Q. Are you presently on parole?

A. Yes, I am on parole.

Q. For what?

A. For attempt murder and armed robbery.

Q. How long ago were these convictions?

A. Seven years ago—eight years ago."

In ruling on the motion *in limine* the court stated that it would permit the State to show that defendant had three felony convictions, but would not allow it to name the crimes. The court shortly thereafter modified this ruling and stated further that if the defense introduced evidence of prior acts of violence by Wayne, then, in rebuttal, the State would be permitted to inform the jury of the names of defendant's prior offenses. Defendant contends that the defense did not introduce evidence of Wayne's prior acts of violence, and, therefore, by asking defendant about his parole status, defense counsel gave the State the opportunity to ask about defendant's previous convictions.

In addition, the State introduced certified copies of his convictions which indicated that defendant had been convicted of armed robbery, when in fact he had not been sentenced on that charge, and it therefore did not constitute a conviction. (*People v. Lashmett* (1984), 126 Ill. App. 3d 340, 467 N.E.2d 356; *People v. Lieberman* (1982), 107 Ill. App. 3d 949, 438 N.E.2d 516.) Defendant maintains that his counsel was incompetent in not requesting that the armed robbery be deleted from the certified copy of conviction.

Defendant also argues that his counsel was deficient in failing to lay the foundation for Jezelle Perdue's testimony impeaching Cleo Wayne and in failing to object to the prosecutor's improper cross-examination and closing argument. Defendant further claims that his counsel was inept in his attempt to present evidence of Wayne's reputation:

"Q. How long have you lived in the neighborhood around 92nd Street?

A. Thirty years.

Q. That is the same neighborhood Arnold Wayne lives in?

A. Yes, it is.

Q. Do you know people in that neighborhood?

A. Yes.

Q. What do these people in the neighborhood say about Arnold Wayne?

[PROSECUTOR]: Objection.

THE COURT: The form of the question is bad. I know what you are trying to do, and you may do it, but not in the manner you are doing it. If you want, I will discuss it with you.

[DEFENSE COUNSEL]: People in the neighborhood say anything about Arnold Wayne?

[PROSECUTOR]: Objection.

THE COURT: I'll sustain it. Why don't you come over here a moment. We don't need the Court Reporter.

(Whereupon discussions were held between the Court and Counsel out of the hearing of the Court Reporter and the jury.)

[DEFENSE COUNSEL]: Do you know what Mr. Wayne's reputation in the community is?

A. Yes. He's a cocaine supplier for the neighborhood.

[PROSECUTOR]: Objection, your Honor.

THE COURT: Objection will be sustained. It will be stricken, and the jury will be instructed to disregard it. I specifically told you [that] you could ask something different and this is improper. And I would suggest you don't do it again.

[DEFENSE COUNSEL]: I'm sorry, your Honor.

THE COURT: Now, it has happened on both sides, so the jury should not be influenced by volunteered negative things that people say about others which is not proper evidence. I indicated to you that you could ask a particular question. I will let you ask that question in the context in which I—no, sir, you be quiet. Go ahead and ask another question."

Defendant contends that these errors, whether viewed individually or cumulatively, were devastating to his case and denied him his right to the effective assistance of counsel.

The State responds that defendant's counsel was effective, and that what defendant is actually complaining about is the trial strategy his counsel chose to follow. It claims that defense counsel questioned defendant about his prior convictions because the attorney intended to put in evidence Wayne's prior criminal convictions in order to show his aggressive tendencies, and counsel felt it would be advantageous to have defendant testify as to these crimes rather than wait for the State to bring them out. At the close of defendant's case defense counsel attempted to introduce evidence of Wayne's two prior felony convictions, but the judge allowed evidence of only the most recent

conviction, which was for theft, ruling that an older conviction was too remote. The State also maintains that the remaining conduct of which defendant complains was not prejudicial to him because it dealt with matters collateral to proving his guilt. Essentially, the State claims that it was not prejudicial for the jury to be told of an improper armed robbery conviction in view of defendant's criminal history. It maintains also that Perdue's testimony, had it been allowed, would not have impacted on the result of the trial, nor would testimony of Wayne's reputation have changed the facts of the shooting.

■■■ A defendant is entitled to competent but not perfect representation. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) In alleging that he has received ineffective assistance of counsel, a defendant must prove that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, citing *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) There is also a strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance." (*Albanese*, 104 Ill. 2d at 526, quoting *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.) Moreover, the burden is on the defendant to prove actual incompetence resulting in prejudice to his case, and the findings of the trial court will be upheld unless manifestly against the weight of the evidence. (*People v. Miller* (1986), 141 Ill. App. 3d 423.) In resolving a claim of ineffectiveness, a court must evaluate the challenged conduct from counsel's perspective at the time it occurred; in other words, a court must consider "the totality of the circumstances." *Strickland v. Washington*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

A review of the record in this case shows that defense counsel's representation did not fall below an objective standard of reasonableness, especially in light of the fact that the evidence adduced herein is not by any standard closely balanced. The State presented a number of witnesses, whom the jury found to be credible, to testify against defendant and to contradict his testimony. Given the strong evidence against him, it is not reasonably probable that the jury would have acquitted defendant had Perdue testified or had the jury not been told that defendant had a conviction for armed robbery. Furthermore, evidence of Wayne's prior conviction was admitted by the defense; therefore, his failure to present evidence as to Wayne's reputation and defense counsel's questioning of defendant regarding his prior

convictions, evidence which the State had been given advance sanction by the court to present, did not prejudice defendant. Because defendant has not overcome the presumption that his attorney provided "reasonable professional assistance," nor shown that the outcome of his trial would have been different had counsel conducted the defense of his client differently, we hold that defendant was not denied his right to the effective assistance of counsel.

■ Defendant next argues that he was denied a fair trial by the prosecutor's cross-examination and his closing and rebuttal arguments. Defendant testified that Wayne was a drug dealer. On cross-examination, the State asked the following:

"Q. Mr. Wayne has never been arrested for dope; has he?
A. I'm not sure. Some people don't get caught.
Q. That's correct. But you did; didn't you?
A. Well—
[DEFENSE COUNSEL]: Objection, your Honor.
THE COURT: Sustained."

Defendant further argues that prior to trial the State tendered to the defense Wayne's record of arrests; so, at the time the State asked this question it was well aware that Wayne had a record of six narcotics arrests. During closing arguments, the State made the following remarks:

"Mr. Arnold Wayne, a married man, a homeowner, admittedly convicted of theft eight or nine years ago, now employed as a salesman. In shifting the guilt, shifting the blame, he becomes a cocaine dealer. That is ridiculous. Do you think if he was a cocaine dealer he wouldn't have come to the attention of the police and you would have heard about it from the defense. That is silly. It is an attempt to dilute the impact of this testimony, make Powell [sic] dirty, make the police dirty, make everybody dirty but who is on trial, and that is Randy Powell."

Defendant asserts that these statements conveyed to the jury a false impression of Wayne (*People v. Ellison* (1980), 89 Ill. App. 3d 1, 411 N.E.2d 350) and also led the jury to infer that defendant was lying about his purchases of cocaine from Wayne. He also claims that the State improperly attempted to shift its burden to the defense by stating that if Wayne had come to the attention of the police, the jurors "would have heard about it from the defense." (*People v. Lopez* (1987), 152 Ill. App. 3d 667, 504 N.E.2d 862; *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 428 N.E.2d 503.) Defendant further avers that the State also attempted to shift the burden to produce evidence to him in its rebuttal argument:

"Now, counsel has also raised an issue, and the defendant has testified that there's [sic] two bullets in the back porch of the victim's house. Ladies and gentlemen, this is totally incredible. This occurred in February of this year. Defense counsel has the same right to subpoena, and he has the same right to investigate as we do. Believe me, if there were two bullets in the back porch of Cleo and Arnold Wayne's, you would have pictures of it. You would have those bullets. You would probably even have the back porch in here, but he wants you to believe that somebody is covering something up. It is pure smoke, pure, pure smoke. Counsel and his client are throwing up smoke, let's get off the main issue here of what really happened, and those two bullets are nothing but smoke. Believe me, if there was any physical evidence to support that, it would be in this courtroom."

Defendant goes on to contend that it was improper for the prosecutor to use the exhortation "believe me," as it constituted an improper expression of personal opinion (see *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256), and that the phrase "throwing up smoke" was an improper accusation of trickery. *People v. Wilson* (1983), 120 Ill. App. 3d 950, 458 N.E.2d 1081; *People v. Young* (1981), 97 Ill. App. 3d 319, 422 N.E.2d 1158.

Defendant also argues that the State denied him a fair trial by arguing in its rebuttal argument that in order to believe the defense the jury had to find all the State's witnesses were lying. (*People v. Crossno* (1981), 93 Ill. App. 3d 808, 417 N.E.2d 827; *People v. Cole* (1980), 80 Ill. App. 3d 1105, 400 N.E.2d 931.) The prosecutor addressed the jury, in pertinent part, as follows:

"Now, the whole gist of the defendant's case is this plot to get the defendant.

\* \* \*

Let's go on with more of the big plot. We have the wife, Cleo Wayne. She is lying, too.

\* \* \*

Then we have doctor Khaja. He is lying as to the number of bullets \* \* \* [and as to] the blood alcohol level.

\* \* \*

Then we get to Detective Paladino. He is another guy in this big plot to get the defendant.

\* \* \*

Detective Huffman \* \* \* is another person that [supposedly] is lying.

\* \* \*

Miss Goliak, the scientist from the Crime Lab \*\*\* [supposedly] lied.

\* \* \*

Now I submit to you, ladies and gentlemen of the jury, you heard all these people testify. What would all these people's motives be to lie? What reason would they have to lie?"

Defendant admits that his counsel failed to object to the improper comments made by the State during closing and rebuttal arguments, but argues that this court should treat the alleged prosecutorial misconduct in this case as plain error.

The State responds that defendant has waived these alleged errors by failing to make an objection at the appropriate time and by failing to specify them in his post-trial motion. In that motion defendant alleged:

"12. That the Assistant State's Attorney made prejudicial and inflammatory statements in closing argument designed to arouse the prejudices and passions of the jury, thereby prejudicing the defendant's right to a fair trial."

Such a general allegation does not preserve the issue for review. (*People v. Camp* (1984), 128 Ill. App. 3d 223, 470 N.E.2d 540; *People v. Thomas* (1983), 116 Ill. App. 3d 216, 452 N.E.2d 77.) The State also urges this court not to treat the alleged prosecutorial misconduct as plain error, because the evidence adduced at trial, and the logical inferences to be drawn therefrom, led inescapably to the conclusion that the defendant was guilty. *People v. Camp* (1984), 128 Ill. App. 3d 223, 470 N.E.2d 540.

■■ ■ This court may elect to review the asserted errors under the plain-error rule (107 Ill. 2d R. 615(a)) after a finding that the evidence is closely balanced and that the error has prejudiced substantial rights of defendant. (*People v. Thomas* (1983), 116 Ill. App. 3d 216, 452 N.E.2d 77.) Defendant claims that the trial was a "credibility contest" between defendant and Wayne, and thus, the case was closely balanced. But this contention ignores the testimony of Detective Paladino, who found the gun under defendant's mattress, and the evidence that the gunshot residue test indicated that defendant had recently handled a firearm or had been in close proximity to it when a firearm was discharged. It also glosses over the testimony of Detective Huffman, to whom defendant denied on the morning after his admitted altercation with Wayne that he had been anywhere near Wayne's home on the previous evening. Moreover, defendant failed to report the shooting to the police, a fact which further attenuates his

version of the events in question. Although we do not approve of the tactics used by the prosecutor, we do not find that the evidence produced in this case is so closely balanced as to warrant the application of the plain-error rule; we thus decline to sustain defendant's position on these issues.

■ Defendant next argues that the State improperly cross-examined defendant about a charge for which he had been acquitted.

"Q. So in that time period, you had nothing whatsoever to do with guns?

A. No.

Q. If anybody said anything different, that would be a lie; right?

A. Right.

Q. You never even had one in your hand?

A. No.

Q. Do you recall meeting an Officer Roberts of the Mass Transit Unit of the Chicago Police Department?

A. Yes.

Q. On December 19, 1985?

A. Yes, I was arrested.

Q. And you had a gun when you were arrested; didn't you?

A. No, I had—they said I had a gun.

Q. They said?

A. Officer Roberts cannot prove I had a gun in court. I just went to court and beat the case.

Q. So you didn't get caught with it. The gun went away.

[DEFENSE COUNSEL]: Objection, your Honor.

THE COURT: Just a moment. There is an objection. It will be sustained. I would suggest you don't go into questioning on this issue anymore."

Later in the cross-examination of defendant, the prosecutor asked:

"Q. Mr. Powell, were you not convicted in New York State on a charge of attempt murder?

[DEFENSE COUNSEL]: Objection, your Honor.

THE COURT: Again, unless the State is prepared to prove it, I will sustain the objection."

Defendant contends that the State never offered proof of the New York conviction or that he possessed a gun on December 19, 1985, and that, therefore, the prosecutor impermissibly availed himself of impeachment by means of unsupported insinuations. *People v. Nuccio* (1969), 43 Ill. 2d 375, 253 N.E.2d 353.

In confessing and avoiding, the State argues that the prejudicial

impact of allegedly improper questions is mitigated when defense counsel properly objects and the trial court correctly sustains the objection with the admonition that the offensive question be stricken, as was done here. (*People v. Boyd* (1980), 88 Ill. App. 3d 825, 410 N.E.2d 931, *cert. denied* (1981), 454 U.S. 1080, 70 L. Ed. 2d 613, 102 S. Ct. 633.) Moreover, the State posits, the improper questions were not material factors in defendant's conviction and therefore are not a basis for reversal. (*People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 337 N.E.2d 454.) Questioning concerning the alleged New York conviction, the State adds, was not prejudicial, because evidence had already been admitted as to defendant's other convictions. See *People v. Harlan* (1979), 75 Ill. App. 3d 168, 393 N.E.2d 1203.

The State's questioning was, as we have already noted, admittedly improper, but we do not believe that it was a material factor in defendant's conviction. A review of the record indicates that evidence of defendant's guilt was considerably strong; thus, the prosecutor's errors do not warrant reversal of the judgment in this case.

■ Defendant next contends that the jury was improperly instructed on attempt (murder). At trial, the following instructions were given:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself." Illinois Pattern Jury Instructions, Criminal, No. 24-25.06 (2d ed. 1981) (hereinafter IPI Criminal 2d).

"A person commits the offense of attempt when he, without lawful justification with intent to commit the offense of murder, does any act which constitutes a substantial step toward the commission of the offense of murder." See IPI Criminal 2d No. 6.05.

"To sustain the charge of attempt, the State must prove the following propositions:

First: That the defendant performed an act which constituted a substantial step toward the commission of the offense of murder; and

Second: That the defendant did so with intent to commit the offense of murder; and

Third: That the defendant was not justified in using the

force which he used." See IPI Criminal 2d No. 6.07.

Defendant argues that even if his belief that he was justified in using force was unreasonable, he still could not be convicted of attempt (murder), and that, accordingly, the jury was instructed improperly when it was told that he had to have a reasonable belief that the use of force was justified. In support of his argument defendant relies on *People v. Reagan* (1983), 99 Ill. 2d 238, 457 N.E.2d 1260. In that case, Reagan was charged with three counts of attempt (murder) and three counts of armed violence, but the jury convicted him on three counts of attempt (voluntary manslaughter) and three counts of armed violence. The issue before the court was whether there is such a crime as attempt (voluntary manslaughter) based on an imperfect self-defense. In holding that there is not, the court stated:

> "The requirement of the attempt statute is not that there be an intent to kill, but that there be an intent to kill without lawful justification. If, as suggested by the People, defendant at the time of the shooting believed the circumstances to be such that if they existed would justify the killing, then there was no intent to commit an offense.
>
> * * *
>
> *** To commit an attempted voluntary manslaughter *** [t]he defendant would have to specifically intend to kill with an unreasonable belief in the need to use deadly force in self-defense. As the State concedes, it is impossible to intend an unreasonable belief. If a defendant intended to kill with the knowledge that such action was unwarranted, he has intended to kill without lawful justification and could be prosecuted for attempted murder. In the case at bar, the defendant intended to defend himself [ ] [and] [a]lthough his belief in the need to defend himself or in the need to use deadly force was unreasonable, his intent was not to commit a crime." (99 Ill. 2d at 240.)

Defendant argues that because an unreasonable belief in the need for the use of force would reduce a murder charge to voluntary manslaughter (*People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141), it should also reduce attempt (murder) to attempt (voluntary manslaughter). He further contends that since the *Reagan* court held that there is no offense of attempt (voluntary manslaughter), he cannot be convicted of attempting to murder Wayne.

The State responds that defendant did not object to the instructions as given, nor did he raise an objection in his post-trial motion, and he therefore has waived the issue on appeal. (*People v. Berry* (1984), 99 Ill. 2d 499, 460 N.E.2d 742; *People v. Huckstead* (1982), 91

Ill. 2d 536, 440 N.E.2d 1248.) It further answers that the plain-error exception to the waiver rule, provided for in Rule 451(c) (107 Ill. 2d R. 451(c)), is not appropriate here for the reason that its use is restricted to the correction of "grave errors" or to situations where the case is close factually and fundamental fairness requires that the jury be properly instructed. *People v. Huckstead*, 91 Ill. 2d at 544.

Assuming *arguendo* that defendant has not waived this issue, we find his argument to be without merit. The legislature defines conduct constituting a crime (*People v. Taylor* (1984), 102 Ill. 2d 201, 205, 464 N.E.2d 1059; *People v. Williams* (1977), 66 Ill. 2d 179, 186, 361 N.E.2d 1110; Ill. Rev. Stat. 1987, ch. 38, par. 1—3), and it has quite clearly chosen not to recognize the crime of attempt (voluntary manslaughter). The legislature has not included in its definition of justification (Ill. Rev. Stat. 1987, ch. 38, par. 7—1) an unreasonable belief in the necessity of the use of force, nor has it provided that such a belief reduces a charge of attempt (murder), as it has done in the case of murder and voluntary manslaughter (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1, 9—2(b)). Furthermore, the legislature has provided that "a person's reasonable belief that his conduct does not constitute an offense is a defense" to a crime in a number of specific situations, but it has made no such provision in the case where defendant pleads an unreasonable belief. Ill. Rev. Stat. 1987, ch. 38, par. 4—8.

*Reagan* is not controlling in this matter, as the holding in that case is that there is no crime of attempt (voluntary manslaughter). The *Reagan* court did not address the issue of whether an unreasonable belief in the necessity of the use of force justifies an attempt (murder), and defendant misreads the case, apparently relying on *dicta*, in order to find support for his contentions in that opinion. In *Reagan*, our supreme court was aware of the holding of those courts and the view of certain commentators, mentioned therein, who favor recognizing the offense of attempt (voluntary manslaughter) (99 Ill. 2d at 241), but it clearly stated that it disagreed with them; we are thus constrained by both the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 1—1 *et seq.*) and controlling case law to hold against defendant on this issue.

■ ■ Defendant next argues that the trial court erred in denying his motion for a new trial based on newly discovered evidence. The jury returned its verdict in defendant's case on July 31, 1986. On August 14, 1986, Arnold Wayne was arrested and charged with possession of 150 grams of heroin, 28 grams of cocaine, 30 grams of marijuana and four guns. Defendant filed his motion for a new trial on August 20, 1986, contending that this newly discovered evidence cor-

roborated his assertion that he was acting in self-defense on the night of the shooting. The trial judge denied plaintiff's motion, stating:

"The jury returned their verdict in this case on July 31st of 1986, and this arrest which is the subject matter of this document that was filed is on August 14th of 1986; and so that is something that happened after the offense and even after the trial; in my opinion would not be—could not be used. It's inconceivable that this could be used or—suppose this had happened after the arrest of the defendant and before the trial; it still could not be used unless it was a pending case under which the State may have—or the witness may be testifying to curry the State's favor. So there is no way in the world I could have considered this evidence at the trial, or even on a subsequent trial unless it was pending at that time."

To entitle a defendant to a new trial, newly discovered evidence must be of such conclusive character that it will probably change the result on retrial, material to the issue and not merely cumulative, discovered since the trial, and of such character that it could not have been discovered prior to trial by the exercise of due diligence. (*People v. Molstad* (1984), 101 Ill. 2d 128, 134, 461 N.E.2d 398, quoting *People v. Baker* (1959), 16 Ill. 2d 364, 374, 158 N.E.2d 1.) The State contends that the newly discovered evidence must have been in existence at the time of trial; defendant maintains that it is unimportant when it came into existence, citing *People v. Albanese* (1988), 125 Ill. 2d 100. In that case, Albanese argued that "the 1985 closing of the Illinois Department of Public Health Toxicology Laboratory because of various serious inadequacies makes analysis for arsenic poisoning done by the lab in 1981 on the three murder victims unreliable." (*Albanese* (1988), 125 Ill. 2d at 108.) In reaching its decision, the court considered various reports on the laboratory and held:

"While the above-named reports and the closing of the lab were not discoverable before the trial, problems with lab procedures might have been difficult for a nontechnician or a nonscientist to discover, and the reliability of the tests could be considered material, we do not find that any of the information—even assuming, for the sake of review, its truth and accuracy—is 'of such *conclusive character* that it will probably change the result on retrial.' " (Emphasis in original.) (125 Ill. 2d at 109.)

Defendant underscores that the court considered the fact that the laboratory was closed in 1985, a factor not in existence at the time of trial in 1981, to determine whether Albanese should have been

granted a new trial. Defendant overlooks, however, the obvious fact that the court considered the new developments at the laboratory only as they reflected problems in that facility at the time of Albanese's trial, and the circumstance that the laboratory had closed in 1985 in and of itself had no impact on Albanese's case.

The State contends that newly discovered evidence which has the effect only of impeaching, discrediting or contradicting a witness is not a basis for a new trial. (*People v. Martin* (1983), 112 Ill. App. 3d 486, 445 N.E.2d 795.) It argues that Wayne's arrest could be used only to impeach his testimony on the collateral issue of whether he used drugs regularly and whether he regularly handled guns. The State further argues that the decision whether to grant or deny a motion for a new trial based on newly discovered evidence is discretionary with the trial court and its decision will not be disturbed on review absent a showing of abuse of discretion. *People v. Hughes* (1984), 121 Ill. App. 3d 992, 460 N.E.2d 485.

Applications for a new trial on the grounds of newly discovered evidence are not looked upon with favor. (*People v. Martinez* (1984), 129 Ill. App. 3d 145, 472 N.E.2d 464.) The requirement that new evidence was not discoverable prior to trial by the exercise of due diligence implicitly demands that the evidence have been in existence at the time of trial. If this were not so, a defendant could challenge his conviction on the basis of events occurring long after his trial. We hold that the trial court did not abuse its discretion in denying defendant's motion for a new trial.

Finally, defendant argues that the trial court erred in denying him access to Wayne's mental health records. After reviewing the records *in camera*, in the presence of counsel for both parties, the trial judge stated:

> "All right. I have read the records of the Tinley Park Mental Health Center. The dates of the hospitalization appear to be in 1974, and he was discharged effective February 4, 1974, and was [a] voluntary patient at the time. And it is my opinion that these records are too remote to this situation; that they have no bearing—could have no legal bearing on this matter. And I will deny them being furnished. And I will order the Clerk to re-seal these and to file them in the court file so that if there's an appeal they will be there to be examined."

Appellate defense counsel was allowed to view the records, and he maintains that trial counsel should have been permitted to view them as well, since this would have enabled him to argue more effectively the need for the records. Our review of the records indicates that

Wayne was voluntarily admitted because of an obsessive behavior, which may have been caused by his drug abuse. Defendant contends that this reference to drug abuse supports his assertion that Wayne was involved with drugs.

The State correctly points out that mental health records are privileged (Ill. Rev. Stat. 1985, ch. 91½, par. 810), and a party seeking disclosure may request an *in camera* inspection made in the presence of counsel for both parties. (*People v. Coates* (1985), 109 Ill. 2d 431, 488 N.E.2d 247.) That is precisely what was done in this case. The records were more than 10 years old at the time of trial; moreover, they do not indicate that Wayne had aggressive tendencies. The trial judge properly held that the records were not relevant.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.