THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
REGINALD BEACHAM, Defendant-Appellant.

First District (4th Division)   No. 1—87—1628

Opinion filed September 28, 1989.

484

Martin Carlson, of State Appellate Defender's Office, and Jenner & Block, both of Chicago (Richard T. Franch and Lisa I. Fair, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

A jury found defendant, Reginald Beacham, guilty of murder and attempted murder arising out of a shooting incident in a lounge in May 1986. He was sentenced to prison terms of 30 years for the attempted murder and 40 years for murder.

On appeal he raises a number of trial errors, primarily involving the manner in which the jury was instructed. He also contends that a member of the jury should have been excused for cause and that he had the right to be present during the exercise of peremptory challenges. Finally, he argues that evidence of his prior conviction for armed robbery was more prejudicial than probative and should have been excluded.

We affirm.

BACKGROUND

On May 11, 1986, at a Mother's Day party in Huskies' Lounge in Chicago, Beacham shot and killed Will James and shot and crippled Frank James. A jury found Beacham guilty of murder and attempted murder.

The State presented six eyewitnesses, including one of the victims, Frank James. According to the testimony, Beacham had come to the lounge and tried to enter without paying the dollar cover charge required of male customers. The tavern's owner, Issac James, heard Beacham cursing and arguing with Clarence Ballard, who was collecting the cover charge at the door. Issac came out from behind the bar to the vestibule and told Beacham not to curse because a Mother's Day party was in progress. At the time, Issac's brother, Frank, was on the telephone ordering more food from the caterer. Beacham saw Will James standing by the bar with his hands in his pockets and demanded to know what he was doing. Beacham then noticed that Frank James was on the telephone and said, "God damn it, you calling the police." He pulled a gun and shot Frank through the neck.

As Frank fell to the floor, Will James told Issac to hold

Beacham. Issac grabbed Beacham, whose gun hand remained free, and when Will went to help Issac, Beacham shot and killed Will James. Beacham broke loose from Issac and fled, dropping his gun. Nine days later, he was arrested. He initially claimed that it was his brother who had committed the shootings.

Beacham's version of the event differed from what the State's witnesses related. He was the only one to testify for the defense. According to him, he and a friend had gone to Huskies' lounge. When he arrived, Clarence Ballard shoved him on the shoulder, telling him he had to pay to get in. Ballard apologized for shoving him. Then Issac James came up and told him to pay the dollar or leave. Beacham said he would rather leave and backed up toward the outer door.

According to Beacham, at this point someone came up with a gun and said, "He told you to leave, nigger." Beacham grabbed the gun and struggled with the unknown person. A shot went off and the gun fell. Next, Beacham testified, he picked up the gun and backed up to the door. A second unknown person came at him with a knife. Beacham tried to deflect the knife hand of the other person, but Beacham was pushed against the door and the gun went off again.

Beacham further testified that he again struggled with people in the vestibule but was able to escape. He went to a friend's house, changed out of the red jogging suit he was wearing, and left it there. He said that when he left the tavern he did not know that anyone had been shot. He denied that he had intended to shoot anyone.

On cross-examination, the State offered· in impeachment of Beacham the fact that he had been convicted of armed robbery approximately nine years earlier.

Beacham offered into evidence a certified copy of a 1984 felony unlawful use of weapons conviction of Will James, the man who had been killed at the tavern. He also produced his red jogging suit into evidence to support· his contention that he did not have a gun when he entered the lounge because the pockets were not large enough to hold a gun.

The jury found Beacham guilty of all charges, and the court sentenced him to consecutive prison terms of 30 years for attempted murder and 40 years for murder. At the sentencing hearing it was revealed that Beacham had at least 15 prior convictions, five of which were for felonies, including armed robbery and intimidation.

OPINION

I

Beacham initially challenges the instructions that were given to the jury. Specifically, he challenges the instructions that set out the State's burden of proof on the manslaughter issue and the instructions that proscribe the use of force by a fleeing felon.

A

■ He argues that the murder and voluntary manslaughter instructions were fatally deficient in light of the Illinois Supreme Court's decision in *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141. In *Reddick* the court held that the Illinois Pattern Jury Instructions (IPI) on point contained grave error because they misstated the State's burden of proof in a murder prosecution. In essence, these instructions require the State to prove the defendant's mitigating mental state necessary to reduce a murder count to voluntary manslaughter under the Criminal Code of 1961, sections 9—2(a) (provocation) and 9—2(b) (unreasonable belief of self-defense). (Ill. Rev. Stat. 1985, ch. 38, pars. 9—2(a), (b).) It is not the State, however, who is interested in proving mitigation; clearly, it is the defendant who introduces such evidence. The State is then required to *disprove* the mitigating mental state beyond a reasonable doubt. The Illinois Supreme Court in *Reddick* concluded that the challenged IPI are misleading because they fail to properly articulate this burden of proof. See also *People v. Brooks* (1988), 175 Ill. App. 3d 136, 529 N.E.2d 732; *People v. Benabe* (1989), 180 Ill. App. 3d 235, 535 N.E.2d 949.

In the pending case, however, we do not find that *Reddick* requires reversal of either of Beacham's convictions.

ATTEMPTED MURDER OF FRANK JAMES

■ ■ The attempted murder charge is unaffected by any *Reddick* error because attempted murder requires proof of a different mental state from murder or manslaughter. The Illinois Supreme Court has held that there is no such crime as attempted voluntary manslaughter. (*People v. Reagan* (1983), 99 Ill. 2d 238, 457 N.E.2d 1260.) In *Reagan* the court noted that a defendant who intends to kill another while acting under an unreasonable belief that his use of force is justified does not have the requisite mental state to commit a crime. Therefore, one charged with attempted murder would be acquitted of that crime, presumably, if the jury believed that the defendant's intent to

kill was motivated by his belief that he was defending himself. It follows that the murder/voluntary manslaughter instructions that were discredited in *Reddick* would not, and should not, be given in an attempted murder prosecution. See *People v. Powell* (1989), 180 Ill. App. 3d 315, 535 N.E.2d 1008.

In the pending case the jury found that when Beacham shot Frank James in the neck, he had the specific *intent* to kill him, without legal justification. If the jury had believed his uncorroborated testimony that the shootings were accidental, or even that he was operating under an unreasonable belief of justification, they would have been compelled to acquit him of attempted murder. (*People v. Reagan* (1983), 99 Ill. 2d 238, 241, 457 N.E.2d 1260; *cf. People v. Powell* (1989), 180 Ill. App. 3d 315, 328, 535 N.E.2d 1008.) Instead, they found that he specifically intended to kill Frank and did not hold even an unreasonable belief of justification. The jury also found Beacham guilty of aggravated battery.

MURDER OF WILL JAMES

■ As for the pattern instructions on murder and voluntary manslaughter given in this case with respect to Will James' death, we concede that they have been deemed erroneous by the supreme court in *Reddick*. Nevertheless, we adhere to the reasoning set forth in *People v. Carter* (1988), 177 Ill. App. 3d 593, 532 N.E.2d 531, which holds that a murder conviction need not be reversed despite the existence of the discredited instructions if the error can be deemed harmless beyond a reasonable doubt.

In *People v. Carter*, as in the pending case, the defendant's own testimony was the only evidence in the record to support his assertion that he acted in self-defense or with an unreasonable belief that he acted in self-defense. The defendant had four times stabbed his wife, a much smaller person, during an argument. He claimed at trial that he did so in self-defense, after taking the knife from her. We concluded that "any error caused by the giving of the now discredited pattern instructions was harmless beyond a reasonable doubt on this record." 177 Ill. App. 3d at 600, 532 N.E.2d at 536.

In *People v. Skipper* (1988), 177 Ill. App. 3d 684, 533 N.E.2d 44 (supplemental opinion (1989), 177 Ill. App. 3d 688, 533 N.E.2d 46), the court expressly followed *Carter* and upheld a conviction despite the existence of a *Reddick* error. The court quoted from a supreme court decision which stated that an erroneous instruction is harmless if the result of the trial would not have differed had the proper instruction been given. *People v. Fierer* (1988), 124 Ill. 2d 176, 187, 529

N.E.2d 972, 976. See also *People v. Bolden* (1989), 181 Ill. App. 3d 481, 536 N.E.2d 1308 (post-conviction petition denied despite contention that *Reddick* error was of constitutional magnitude) (declining to follow opposing reasoning of *People v. Brooks* and *People v. Flowers*).[1]

We find the pending case to be similar to *Carter* in that the evidence of Beacham's supposed belief in self-defense is utterly contradicted by all other witnesses who were present and by the inherent weakness of his own testimony. Beacham testified that both shootings were accidental; the gun simply discharged during the course of two separate struggles and happened to hit the two victims. If the jury had believed this, it would have acquitted him because he would have been found to lack criminal intent, including that required by voluntary manslaughter.

According to Beacham, someone else with a gun threatened him as he was leaving the lounge because he would not pay the dollar cover charge. He then grabbed the gun, which went off and hit Frank, the man Beacham thought was telephoning the police. The gun dropped but Beacham recovered it and again tried to leave, while another unidentified person came up with a knife and threatened him. This time, he testified, the person with the knife pushed him, while Beacham was holding the gun, and the force of that push knocked him into the wall. This caused the gun to fire again, mortally wounding Will James.

Significantly, Beacham fled from the shooting scene and changed his clothes immediately. He did not telephone the police to report the supposedly accidental shootings, and after his arrest he gave a false name, claiming that the real killer had fled to New Jersey.

The courts have held that even if a judge refuses to tender a manslaughter instruction in a murder case when requested, the error is harmless when evidence of guilt of murder is overwhelming. *E.g., People v. Moore* (1983), 95 Ill. 2d 404, 447 N.E.2d 1327; *People v. Diekelmann* (1937), 367 Ill. 372, 11 N.E.2d 420.

---

[1]The *Bolden* court determined that the Illinois Supreme Court in *Reddick* did not intend to set forth a principle of constitutional law—despite the "grave error" label given to the erroneous instructions—because it stated that its decision would have "limited application." If the supreme court had indeed meant to give the error constitutional status, the *Bolden* court noted, all previous murder convictions in which the voluntary manslaughter instructions were given would be subject to post-conviction attack. The *Bolden* court did not believe that the supreme court intended to "delve into" the complex question of whether the giving of an imperfect instruction on an included offense violates due process. 181 Ill. App. 3d at 488, 536 N.E.2d at 1312.

■ The above authorities indicate that the discredited instructions given on voluntary manslaughter did not cause reversible error. Furthermore, once Beacham started to leave the tavern after attempting to murder Frank, he was in fact a "fleeing felon," who was not entitled to use force in defending himself. (Ill. Rev. Stat. 1985, ch. 38, par. 7—4(a) (self-defense unavailable to one who is "attempting to commit, committing, or escaping after the commission of, a forcible felony").) Even if someone was then threatening him with a knife, as he testified, and even if someone struggled with him as he tried to leave, that would not amount to a legal defense of voluntary manslaughter based on an unreasonable belief in self-defense.

Finally, there is no competent evidence to support a voluntary manslaughter instruction based on a sudden and intense passion resulting from intense provocation. (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a).) Defendant's own testimony was that the shootings were accidental, and certainly, any altercation over the dollar cover charge could not be transmuted into provocation that reduces murder to manslaughter.

We conclude that the pattern instructions that misstate the prosecution's burden of proof for a voluntary manslaughter conviction could not be deemed to have made a difference in the outcome of this case. Accordingly, the error was harmless beyond a reasonable doubt.

## B

Next, Beacham challenges the pattern instructions that set forth the law concerning justified force and the use of force by a fleeing felon. Beacham tendered the general self-defense instruction to be given to the jury, which states that use of force is justified "when and to the extent that [a person] believes that such conduct is necessary to defend himself against the imminent use of unlawful force." (IPI Criminal No. 24—25.06 (2d ed. 1981) (IPI Criminal 2d).) The court also gave the State's requested instructions, over defense objection, on the use of force by a fleeing felon. This instruction states, "A person is not justified in the use of force if he is escaping after the commission of a forcible felony." (IPI Criminal 2d No. 24—25.10.) "The term 'forcible felony' means any felony which involves the use of or threat of physical force or violence against any individual." IPI Criminal 2d No. 4.05.

Beacham concedes that these instructions accurately describe the law, but argues that they may have confused the jury because they do not relate the law to the facts of the pending case. He further claims that the jury therefore must have been confused into believing that

the fleeing-felon instructions overrode the self-defense instruction to the point that Beacham was not justified under any circumstances in defending himself against an attack.

■ We find little support for the argument that the jury instructions were confusing. The proffered defense instructions on self-defense, as well as the voluntary manslaughter defense, were for the benefit of Beacham. The State's instruction on use of force by a fleeing felon was properly given. In any event, Beacham does not set forth alternative instructions that could have been given to alleviate any perceived confusion. Merely objecting to the submission of an instruction, without offering an alternative, does not impel the trial court to sustain the objection on grounds that an accurate statement of the law may mislead the jury. *E.g., People v. Tannenbaum* (1980), 82 Ill. 2d 177, 415 N.E.2d 1027.

■ Moreover, Beacham's contention that the jury could have found that he committed attempted murder while acting under the belief that self-defense was justified is incorrect under *People v. Reagan*, which holds that an unreasonable belief of justification is incompatible with the mental state necessary for an attempted murder conviction. Hence, once the jury determined that Beacham committed attempted murder in shooting Frank James, it necessarily follows that he lost any self-defense justification in shooting Will James. See *People v. Moore* (1983), 95 Ill. 2d 404, 447 N.E.2d 1327.

## II

Next, Beacham challenges the jury selection process. Specifically, he states that his exclusion from a portion of the selection process violated his constitutional rights and that the court further erred in denying his motion to exclude a juror for cause.

The *voir dire* was conducted in open court, after which the attorneys retired to the judge's chambers to exercise challenges. Beacham was present during the *voir dire* and given the opportunity to consult with counsel regarding the potential jurors, but was not present in chambers when the juror challenges were made. According to Beacham, this deprived him of a fundamental due process right to participate in the challenge of jurors because he was unaware of which jurors would be stricken for cause or peremptorily challenged by the State. Thus, he was unable to reevaluate his choices and make informed decisions. This in turn denied him effective assistance of counsel.

■ We find little merit in this argument because the record indicates, and Beacham admits, that he was present during the *voir dire*

and was able to consult with his attorney before the exercise of challenges in chambers. He did not object to the procedure until after the selection process was completed. At one point Beacham was allowed to reverse his counsel's acceptance of a panel of jurors. There is no indication that the procedure used in the pending case critically infringed upon Beacham's constitutional rights.

In *People v. Spears* (1988), 169 Ill. App. 3d 470, 525 N.E.2d 877, the court upheld a procedure similar to the one used by the trial judge in the pending case, holding that peremptory challenges may be exercised outside the presence of the defendant as long as the defendant is given the opportunity to confer with counsel beforehand. We conclude that Beacham's participation in the jury selection was not so limited as to deny him a fair trial. See also *People v. DeSavieu* (1983), 120 Ill. App. 3d 420, 426, 458 N.E.2d 504, 509 (trial court has the right to reasonably regulate jury selection).

As a second challenge to the jury selection process, Beacham asserts that an alternate juror—a security officer who had once been the victim of a crime—should have been dismissed for cause. Ultimately this juror was called to serve when a regular juror was excused. According to Beacham, this violated his right to have an impartial jury sit in judgment of him.

While this assertion is a serious one, we do not agree with Beacham that the juror, because she was a security guard, "must be presumed biased." If that were the case, all security guards, despite the nature of their duties or any other facts, would automatically be excused for cause. The record contains no details about the woman's duties, beyond the fact that she worked part time for the Pinkerton Corporation as a security officer and wore a uniform. She did not carry a weapon. She also stated that she had once been "robbed," but no facts explain the circumstances of this incident. The woman stated that her background would not affect her ability to serve as an impartial juror.

The trial court considered the defense motion to excuse the woman for cause and denied it, seating her as the first alternate juror. We believe that the trial judge was in the better position to judge her demeanor and sincerity as to her lack of bias. Defense counsel could have requested the court to elicit more facts regarding her duties and the mugging incident. The burden of moving to strike a juror for cause is on the challenging party (*People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705), and we conclude that the trial court's denial of the motion was not error.

### III

As his final contention, Beacham claims that he was unduly prejudiced because the State was allowed to offer as impeachment his prior conviction for armed robbery.

We recognize that in every case in which evidence of prior crimes is allowed there is some danger that the jury will be prejudiced against the accused because of that prior crime. Nevertheless, there are circumstances in which such evidence is permitted because it is probative on an issue that is material to the case. To safeguard an accused against the use of other crimes evidence to show the accused's propensity to commit the one for which he is on trial, the courts have developed certain guidelines. The guiding decision for the pending case is the Illinois Supreme Court's decision in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, where the court adopted the rationale of proposed Federal Rule of Evidence 609. Under *Montgomery*, evidence of a prior conviction may be admitted to impeach the accused's credibility if he testifies, provided that the conviction is not more than 10 years old; the conviction either involves dishonesty or is punishable by death or imprisonment of more than one year; and the probative value of the evidence outweighs its prejudicial nature. In exercising its discretion, the trial court may consider such factors as the nature of the crime, its similarity to the one charged, and the subsequent career of the person. See *People v. Spates* (1979), 77 Ill. 2d 193, 205, 395 N.E.2d 563, 569.

In the pending case, Beacham's armed robbery conviction qualified under the first two criteria without question. As for the third, there is also little doubt that Beacham's credibility was critical, especially since he was the sole defense witness. The jury was charged with deciding whether the State's evidence, including that given by the six eyewitnesses, proved Beacham guilty beyond a reasonable doubt. Beacham's defense was inconsistent with the State's case, and therefore, the issue of his credibility was material. The trial court is accorded broad discretion in deciding whether to permit a prior conviction for impeachment. (*People v. Hall* (1983), 117 Ill. App. 3d 788, 453 N.E.2d 1327.) We conclude that the court's decision was not an abuse of this discretion.

For the foregoing reasons, we affirm Beacham's convictions and sentences.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.